ELSIE HOFMANN ET AL. *v.* THE UNITED WELDING
AND MANUFACTURING COMPANY

INGLIS, C. J., BALDWIN, O'SULLIVAN, QUINLAN and WYNNE, Js.

Argued December 2, 1953—decided January 26, 1954

*Louise Foster,* of the District of Columbia bar, special assistant to the attorney general, with whom were *Edward J. Lonergan,* assistant United States attorney, and, on the brief, *Simon S. Cohen,* United States attorney, *H. Brian Holland,* assistant attorney general, and *Ellis N. Slack* and *A. F. Prescott,* special assistants to the attorney general, for the appellant (defendant United States).

*Louis Weinstein,* assistant attorney general, with whom, on the brief, was *William L. Beers,* attorney general, for the appellee (state).

*M. J. Blumenfeld,* with whom was *James J. Dutton,* for the appellees (defendant stockholders).

O'SULLIVAN, J. The plaintiffs, as stockholders of the defendant corporation, instituted this action on August 29, 1946. Their complaint alleged that the corporation was solvent but that its assets were in danger of being wasted. They prayed for the appointment of a receiver and for the dissolution of

the corporation. On January 16, 1947, no plea or answer having been filed, the court, after hearing the plaintiffs and one other stockholder, found all allegations of the complaint true and rendered an interlocutory judgment appointing a permanent receiver.

During the time limited by the court, the state of Connecticut filed with the receiver a claim of $5649.48 for unpaid corporate taxes. Within the same period, the United States filed two claims, one for $289,001.72, the other for $282,255.71. The former, a tax claim, was based on deficiencies found by the commissioner of internal revenue; the latter, a renegotiation claim, had been determined by the war contracts price adjustment board, acting under authority of the renegotiation act of 1943. All three claims had accrued prior to receivership and are valid. Each was allowed by the receiver and, subsequently, by the court. The defendant has never been adjudged insolvent in this or in any other proceeding.

After liquidating the corporate assets, the receiver has approximately $200,000 on hand, an amount which is insufficient to pay the claims of both the federal and the state governments. On October 31, 1952, he filed an application for an order for the distribution of these funds. On January 23, 1953, the court ordered that they be paid "to the United States and the State of Connecticut in proportion to the face amount of their respective claim[s]." The United States has appealed from the order, assigning as the sole error the refusal of the court to hold that the claims of the United States were entitled to priority over that of the state. Certain stockholders of the defendant also contend that the court erred in its determination of the amount due the United States. The order appealed from decided only the question of priority. The allowance of the claim of

the United States was entered in a separate order. The question sought to be raised by these stockholders is not at issue on this appeal.

The federal government bases its claim of priority on § 3466 of the Revised Statutes (1875). 31 U.S.C. § 191 (1946).[1] The statute has been in force since 1797 without material change. 1 Stat. 515; *United States* v. *Emory,* 314 U.S. 423, 428, 62 S. Ct. 317, 86 L. Ed. 315. Its constitutionality has been upheld. *United States* v. *Fisher,* 2 Cranch (6 U.S.) 358, 396, 2 L. Ed. 304. It necessarily follows that § 3466 is the supreme law of the land and the courts of this state are bound by and must apply it, whenever it is pertinent. U.S. Const. Art. VI; *Brown* v. *General Laundry Service, Inc.,* 139 Conn. 363, 368, 94 A.2d 10.

The substance of many of the decisions addressed to the statute since its enactment is that, by adding the language which follows the semicolon, the framers of the statute intended to and did limit its operation to the type of cases selected as illustrations. *United States* v. *Hooe,* 3 Cranch (7 U.S.) 73, 91, 2 L. Ed. 370; *Conard* v. *Atlantic Ins. Co.,* 1 Pet. (26 U.S.) 386, 438, 7 L. Ed. 189; *Beaston* v. *Farmers' Bank of Delaware,* 12 Pet. (37 U.S.) 102, 133, 9 L. Ed. 1017. Consequently, to render the statute applicable and thus to extend priority to a federal claim, there must be (1) a case of an insolvent debtor who makes

---

[1] "Sec. 3466. Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

a voluntary assignment of his property, or (2) a case in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law, or (3) a case in which an act of bankruptcy is committed. *United States* v. *Oklahoma,* 261 U.S. 253, 262, 43 S. Ct. 295, 67 L. Ed. 638.

As the basis for establishing the applicability of the statute, the federal government in the case at bar relies exclusively on the third mode for manifesting insolvency. The specific act of bankruptcy which, it maintains, was committed is that, while insolvent or unable to pay maturing debts, the defendant procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver to take charge of its property. 52 Stat. 844, 11 U.S.C. § 21 (a) (5) (1946).

That the defendant was insolvent, under every recognized meaning of that term, when the receiver, approximately six years after his appointment, applied for an order to distribute the funds on hand is perfectly obvious. No one challenges the fact. The court was well aware of it for, in a memorandum upon the application, the court observed that "[a]n inspection of the file indicates hopeless insolvency"; the state of Connecticut was likewise cognizant of the defendant's financial plight as of that time and readily concedes its then existence; and the finding abundantly demonstrates the force of the court's observation and the reason for the state's concession, since the distributable assets are but $200,000 while the allowed claims of both governments, excluding all other obligations, total $576,906.91. This points up the clash between the parties. It is the state's position that § 3466 is not pertinent unless the debtor is shown to be insolvent at the time receivership begins, while the federal government

maintains that insolvency, whenever established during receivership, makes the statute applicable.

To support its contention, the United States places great reliance on three cases, *Price* v. *United States*, 269 U.S. 492, 46 S. Ct. 180, 70 L. Ed. 373, *Hatch* v. *Morosco Holding Co.*, 61 F.2d 944, cert. denied sub nom. *Irving Trust Co.* v. *United States*, 288 U.S. 613, 53 S. Ct. 404, 77 L. Ed. 986, and *Davis* v. *Pullen*, 277 F. 650. We do not attribute to these cases the significance which the federal government insists they possess. Thus, the *Price* case goes no further than to hold that the answer of the corporation, on a petition for receivership, admitting not only an inability to pay its debts but also the grave possibility that certain creditors were about to obtain inequitable preference as against other creditors, and joining in the plaintiff's prayer for relief, amounted to a voluntary assignment of its property within the meaning of § 3466. In the *Hatch* case, the receiver conceded that on the date of his appointment the corporate estate was insolvent. In the *Davis* case, the creditor petitioning for the appointment of a receiver alleged that the corporation, though solvent, was financially embarrassed. The master, to whom certain claims were referred, found that "when the bill was filed, the respondent corporation was . . . insolvent" (p. 651), although neither the petitioner nor the corporation then appreciated that fact. In discussing the matter, the court said (p. 654): "Certainly, when a debtor has assented to the appointment of a receiver on a bill which prays that its debts may be established and ordered to be paid out of its assets, and when, on marshaling assets and liabilities, it appears that such debtor is and was at the beginning of the proceedings hopelessly insolvent, it would seem plain that such insolvency was sufficiently

notorious to bring the case within the fair meaning of the words bankruptcy and insolvency as used when the priority statute was enacted." In any event, in all three cases, the federal government ·did not limit itself, as it has expressly done in the case at bar, to the third mode of manifesting insolvency mentioned above.

We understand the highest judicial authority to hold that insolvency under § 3466 must exist when the receiver is appointed. It necessarily follows that the act of bankruptcy upon which the federal government relies to prove such insolvency in the case at bar must have been committed at that time. The test to be applied is whether the company was then insolvent as defined by the Bankruptcy Act,[1] or was insolvent in the sense of being unable to pay its maturing debts. *Otis Elevator Co.* v. *Monks,* 191 F.2d 1000, 1002. It is true that the great disparity between the funds presently on hand and the allowed debts is a weighty indication of insolvency in 1947. The disparity, however, is not necessarily conclusive. Causes other than original insolvency may conceivably have produced that financial condition during receivership. It is a well-known fact that the value of the assets of a company may suffer a substantial loss if, under receivership, it fails to continue on as a going concern. Contingencies might happen to reduce a company's status from one of solvency to that of insolvency within a short space of time. *Arkansas Oil & Mining Co.* v. *Murray Tool & Supply Co.,*

---

[1] "A person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts." 52 Stat. 840, 11 U.S.C. § 1 (19) (1946).

127 F.2d 564, 566. Whether the company was, at the time when receivership began, either insolvent or unable to pay its maturing debts cannot be determined as a matter of law upon the record before us. The trier must pass upon that question. Only if the court finds that the company was insolvent under the Bankruptcy Act, or was unable to pay its maturing debts, can the court conclude that an act of bankruptcy was committed, and only upon that conclusion may priority attach to the federal claims. We further add that the interlocutory judgment, finding true all the allegations of the complaint including that of solvency, is not conclusive upon the parties in the present proceeding because the question of solvency had not been litigated between them and the finding of solvency was not an essential prerequisite to the appointment of a receiver.

The trial court based its conclusion that § 3466 did not control upon our dictum in *Brown* v. *General Laundry Service, Inc.,* 139 Conn. 363, 370, 94 A.2d 10. We there said: "This section applies only to cases in which the person indebted to the United States has been adjudged insolvent." Apparently the court thought that it was precluded from applying § 3466 in the present case because there had been no prior adjudication of insolvency. There is, however, no intendment in the dictum that the fact of insolvency may not be adjudicated in the very proceeding in which priority is being sought. It was the duty of the court, in passing upon the matter of priority, to determine whether facts existed which brought the claim of the United States within the section in question.

There is error, the order of January 23, 1953, is set aside and the case is remanded with instructions to determine the fact of solvency or insolvency as of

January 16, 1947, and, if such insolvency is found, to enter an order directing the receiver to pay the funds in his hands to the federal government, but, if such insolvency is not found, to reinstate the order of January 23, 1953.

In this opinion the other judges concurred.