COMMUNITY PROGRESS, INC. *v.* EDWARD WHITE ET AL.

PETERS, PARSKEY, ARMENTANO, SHEA and BRENNAN, Js.

Argued March 5—decision released May 11, 1982

*Alexander Winnick,* for the appellants (defendants Jones et al.)

*Barry K. Stevens,* assistant United States attorney, for the appellee in the first case and appellant in the second case (defendant United States of America).

*William J. Prensky,* assistant attorney general, with whom were *Charles Overend,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, for the appellee (defendant state of Connecticut).

*David A. Reif,* for the appellee (plaintiff).

PETERS, J. This appeal concerns the relative priority of the United States and other creditors in the judicial dissolution of a corporation pursuant to a state statute. The plaintiff, Community Progress, Inc., filed a certificate of dissolution with the Secretary of the State of Connecticut on March 1, 1977 and three days later, on March 4, filed a petition, pursuant to General Statutes § 33-491,[1] asking

[1] "[General Statutes] Sec. 33-491. PETITION TO SUPERIOR COURT RE MATTERS RELATIVE TO DISTRIBUTION. (a) In the case of any dissolved corporation, the superior court for the judicial district where the principal office of such corporation is located, or any judge thereof, may, without limiting the generality of its authority, upon the petition of the corporation, or of a director, or of a creditor or member entitled to vote on dissolution, at any time order and adjudge in respect of the following matters, or any of them: (1) The presentation and proof of all claims and demands against the corporation and of all rights, interests or liens in or on any of its property; the fixing of the time within which and the manner in which such proof shall be made and the person to whom such presentation shall be made; and the barring from participation in any distribution of assets of all persons failing to make and present proofs as required by the order of the court; (2) the stay of the prosecution of any proceeding against the corporation or involving any of its property, and the requirement that the parties thereto present and prove their claims, demands, rights, interest or liens at the time and in the manner required of creditors or others; or the grant of leave to bring or maintain an independent proceeding to enforce liens; (3) the settlement or determination of all claims of every nature against the corporation or any of its property; the determination of the assets required to be retained to pay or provide for the payment of such claims, or any claim; the determination of the assets available for distribution among members; and the making of new parties to the proceeding so far as the court deems proper for the determination of all matters;

for judicial determination of all outstanding claims and demands against it. After due notice and the filing of various claims, the trial court held a hearing and made a determination about the plaintiff's assets and the claimants' respective rights thereto. The claimants who have appealed are two attachment creditors and the United States.

The facts found by the trial court in its memorandum of decision are undisputed. The debtor's sole assets at the time of its dissolution consisted of funds totaling $171,144.80 on deposit in three banks, of which $50,000 in the Orange National Bank were subject to attachment. The United States filed claims totaling $3,178,045, consisting of $799,055 owed to the Community Services Administration and $2,378,990 owed to the Department of Labor. The State of Connecticut filed claims of $1,041,732.20, arising out of moneys due on various

(4) the determination of the rights of members of all classes in and to the assets of the corporation; (5) the presentation and filing of intermediate and final accounts of the directors and officers and hearings thereon; the allowance, disallowance or settlement of such accounts; claims of every description arising out of the conduct of the affairs of the corporation or its winding up by the corporation against any director, officer or member thereof or by any director, officer or member thereof against the corporation or any other director, officer or member; and the discharge of the directors or officers or any of them from their duties and liabilities as such; (6) the appointment of any person deemed, in the discretion of the court, qualified to hear and determine any such matters with such authority as the court deems proper; (7) the filling of any vacancies in the number of directors when the directors are unable to act thereon for want of a quorum or for any other reason; (8) the appointment of a receiver as provided in section 33-493; (9) the issuance or entry of any injunction or any other order which the court deems proper in the administration of the trust involved in the winding up of the affairs of the corporation and the giving of notice thereof; (10) the allowance and payment of compensation to the directors or officers, or any of them, to a receiver, to any person properly rendering services beneficial to the corporation or to those interested in it and to the attorneys

state grants-in-aid contracts. Sonford Ressler and Durrick O. K. Jones had attachment liens totaling $50,000; the Jones lien had matured into a judgment lien, but neither lien had been perfected through an execution. In addition, claims were filed by two attorneys. Attorney David A. Reif had a claim for $1874.50 for fees and expenses directly attributable to the dissolution proceedings themselves. Attorney Stephen E. Ronai was awarded $5000 on a claim of $6375 for services rendered to preserve the assets of the plaintiff in connection with the lawsuits that had resulted in the attachment claims.

The trial court, concluding that there was no evidence of the plaintiff's insolvency, relied solely upon the priority of claims established by § 33-494[2]

of any of them and of the petitioner; (11) the entry of a judgment or decree which, if it so provides, may operate as the deed or other instrument ordered to be executed, or the appointment of a person to execute such deed or instrument in the name of the corporation with the same effect as if executed by an authorized officer pursuant to authority conferred by the directors or the members of the corporation, whenever there is no officer or agent competent to execute such deed or instrument, whenever the corporation or its officers do not perform or comply with a judgment or decree of court, or whenever the court deems it proper; and (12) the assumption by the court of general jurisdiction and supervision over the winding up of the corporation, with all powers provided in this section or in section 33-493 or consonant with the usages of a court of equity in the circumstances.

(b) In proceedings brought pursuant to this section, process shall be served on the corporation as in other civil actions, such notice shall be given to the board of directors and such other interested persons as the court deems proper and it shall not be necessary to make members parties thereto unless relief is sought against them personally.

(c) A judicial proceeding pursuant to this section shall be subject to appeal to the supreme court as provided in section 52-263."

[2] "[General Statutes] Sec. 33-494. PRIORITY OF CLAIMS IN JUDICIAL WINDING-UP. If the court has undertaken the winding up of the affairs of a corporation or the supervision thereof in accordance with section 33-491 or 33-492, claims against the corporation shall be paid in the following order of priority: (1) Reasonable com-

and ordered distribution as follows: Under § 33-494 (1), as a first priority, the claims of Attorney Reif and Attorney Ronai; under § 33-494 (3), the claims of the United States and the State of Connecticut "upon a parity basis"; and under § 33-494 (5), all other claims. The court specifically found that because of the absence of a timely execution, the attached funds on deposit with the Orange National Bank had become part of the assets available for distribution to priority creditors.

On this appeal, the United States challenges the trial court's conclusion about the applicable statutes and the creditors Jones and Ressler contest the court's conclusion about the status of their respective judgment and attachment liens. Since resolution of the claims of the United States necessarily has implications for the status of liens created under state law, we will address first the appeal of the United States.

Federal law provides for the claims of the federal government a virtually absolute priority in the assets of an insolvent debtor in cases in which an act of bankruptcy has been committed. The gov-

pensation to the receiver, if any, and to his counsel, and to the counsel of the petitioner who made the application for the winding up of the corporation, the court costs, including officers' fees, as set forth on any process in such action and, in the discretion of the court, reasonable compensation to counsel for any creditor of such corporation who has rendered service for or on behalf of the receiver; (2) debts due any laborer, mechanic, clerk or salesman for personal wages for any labor or services performed within three months next preceding the filing of the petition for winding up in full to the amount of six hundred dollars for each such debt; (3) all debts or taxes due the United States, any state or territory or any political subdivision of any state or territory, upon a parity basis; (4) secured claims to the extent secured, provided the owners thereof shall first relinquish such security as they may hold for the payment of such claims; and (5) general claims in proportion to their respective amounts."

erning statute, variously denominated § 3466 of the Revised Statutes (1875) or 31 U.S.C. § 191,[3] has been in force since 1797 and is founded upon a policy of protecting the federal revenues. The Supreme Court of the United States has repeatedly stated that "the statute must be given a liberal construction consonant with the public policy underlying it." *United States* v. *Key,* 397 U.S. 322, 324, 90 S. Ct. 1049, 25 L. Ed. 2d 340 (1970); *United States* v. *Moore,* 423 U.S. 77, 81–82, 96 S. Ct. 310, 46 L. Ed. 2d 219 (1975); *Bramwell* v. *United States Fidelity & Guaranty Co.,* 269 U.S. 483, 487, 46 S. Ct. 176, 70 L. Ed. 368 (1926). It is clear that federal rather than state law determines the proper characterization of a state or private lien that may be competitive with the claims of the United States; *United States* v. *Security Trust & Savings Bank,* 340 U.S. 47, 51, 71 S. Ct. 111, 95 L. Ed. 53 (1950); *Illinois ex rel. Gordon* v. *Campbell,* 329 U.S. 362, 374–75, 67 S. Ct. 340, 91 L. Ed. 348 (1946); *United States* v. *Oklahoma,* 261 U.S. 253, 260, 43 S. Ct. 295, 67 L. Ed. 638 (1923); and doubtful, under federal law, whether any such competing lien is ever sufficiently perfected and choate to overcome the priority given to the United States. *United States* v. *Vermont,* 377 U.S. 351, 358 n.8, 84 S. Ct. 1267,

---

[3] 31 U.S.C. § 191 provides as follows:

"PRIORITY ESTABLISHED

Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

12 L. Ed. 2d 370 (1964); *United States* v. *Gilbert Associates, Inc.,* 345 U.S. 361, 365, 73 S. Ct. 701, 97 L. Ed. 1071 (1953); *Illinois ex rel. Gordon* v. *Campbell,* supra, 370; *United States* v. *Texas,* 314 U.S. 480, 486, 62 S. Ct. 350, 86 L. Ed. 356 (1941); see generally Plumb, "The Federal Priority in Insolvency: Proposals for Reform," 70 Mich. L. Rev. 3 (1971); Kennedy, "The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien," 63 Yale L.J. 905 (1954); 2 G. Gilmore, Security Interests in Personal Property (1965) § 40.3.

This court recognized, in *Hofmann* v. *United Welding & Mfg. Co.,* 140 Conn. 597, 600, 102 A.2d 878 (1954), that "§ 3466 is the supreme law of the land and the courts of this state are bound by and must apply it, whenever it is pertinent." We held (p. 604), furthermore, that the fact of the debtor's insolvency, which triggers the applicability of § 3466, may be adjudicated "in the very proceeding in which priority is being sought. It was the duty of the court, in passing upon the matter of priority, to determine whether facts existed which brought the claim of the United States within the section in question."

In order for its § 3466 claim to priority to be established under the circumstances of this case, the United States must demonstrate (1) the insolvency of the debtor, (2) debts due to the United States and (3) either a voluntary assignment of the debtor's property or the commission of an act of bankruptcy. The trial court found that the plaintiff-debtor had not challenged the correctness of the amounts claimed to be owed to the United States. The court concluded, however, that the

statute was inapplicable because the plaintiff's insolvency had not been demonstrated. It noted that the plaintiff had neither been adjudicated a bankrupt nor alleged its insolvency in its petitions for dissolution and for winding up.[4] It found, furthermore, that no evidence "was ever introduced during any part of the proceedings by any party that [the plaintiff] was insolvent under the Federal Bankruptcy Act or was unable to pay its maturing debts." We disagree that the record at trial was insufficient to establish the plaintiff's insolvency.

The test of whether a person is insolvent under the Bankruptcy Act is that "the aggregate of his property . . . shall not at a fair valuation be sufficient in amount to pay his debts." 11 U.S.C. § 1 (19) (1940) (52 Stat. 840 [1938]). Measured by that test, the plaintiff's insolvency is apparent. Its total assets of $171,144.80 are insufficient to pay the $3,178,045 owed to the United States, and there are other outstanding creditors' claims as well. *Hofmann* established that insolvency may be determined without a formal adjudication of bankruptcy. The only reason why *Hofmann* required a remand to the trial court for a further determination of insolvency was that there the discrepancy between the debtor's assets and his debts only became apparent six years subsequent to the institution of receivership proceedings. A remand was therefore essential to determine whether, despite an initially uncontested allegation of solvency at the institution of the receivership, the debtor was already insolvent

---

[4] At oral argument, counsel for the plaintiff stated that a petition had been filed under state law in order "to avoid bankruptcy and all the attendant expenses" so as to retain some funds for ultimate distribution. The petition as filed contained no allegation whatsoever relating to solvency.

at that earlier time. In the case before us, the insufficiency of the plaintiff's assets to pay its debts incontrovertibly arose at the very time that wind-up proceedings under General Statutes § 33-494 were begun. The evidence before the trial court in the form of claims both timely filed and uncontested in amount establishes the plaintiff's insolvency.

The plaintiff's insolvency is only one element of what the United States must prove to establish its § 3466 priority. The attaching creditors in their appeal raise the question whether the claims owed to the United States are "debts" within the meaning of the federal statute. These creditors argue that the federal claims for reimbursement, based upon unauthorized expenditures which were disallowed after audit, do not sufficiently allege an obligation to repay upon the part of the plaintiff. This argument is unpersuasive.

The claim of the federal government arose out of government contracts with the plaintiff. Such contracts automatically incorporate by reference applicable federal statutes and regulations. *G. L. Christian & Associates* v. *United States,* 160 Ct. Cl. 1, 66–67, 312 F.2d 418, reh. denied, 160 Ct. Cl. 58, 320 F.2d 345, cert. denied, 375 U.S. 954, 84 S. Ct. 444, 11 L. Ed. 2d 314 (1963), reh. denied, 376 U.S. 929, 84 S. Ct. 657, 11 L. Ed. 2d 627, motion for leave to file second petition for rehearing denied, 377 U.S. 1010, 84 S. Ct. 1906, 12 L. Ed. 2d 1059 (1964); and see *Sutton* v. *United States,* 256 U.S. 575, 41 S. Ct. 563, 65 L. Ed. 1099 (1921); *The Floyd Acceptances,* 74 U.S. (7 Wall.) 666, 19 L. Ed. 169 (1868). Federal legislation expressly permits governmental recovery of grant funds improperly spent. See 42

U.S.C. § 2835 (c).[5] Read in conjunction with this statute, the plaintiff's contractual duties included an obligation to repay unauthorized expenditures.

Nothing else about these obligations would exclude them from qualifying as "debts" within § 3466. That term has consistently been broadly defined in the federal cases. *United States* v. *Moore,* 423 U.S. 77, 85, 96 S. Ct. 310, 46 L. Ed. 2d 219 (1975); *Bramwell* v. *United States Fidelity & Guaranty Co.,* 269 U.S. 483, 487, 46 S. Ct. 176, 70 L. Ed. 368 (1926); Plumb, supra, 10–12. It includes obligations arising out of government contracts even when the amounts due have not been finally liquidated before initiation of dissolution proceedings; *United States* v. *Moore,* supra, 85; and includes repayment obligations arising out of federal programs for grants and loans. See, e.g., *Small Business Administration* v. *McClellan,* 364 U.S. 446, 451–52, 81 S. Ct. 191, 5 L. Ed. 2d 200 (1960); *United States Department of Agriculture* v. *Remund,* 330 U.S. 539, 544–45, 67 S. Ct. 891, 91 L. Ed. 1082 (1947). Considering the consistent refusal of the Supreme Court of the United States to limit the

---

[5] 42 U.S.C. § 2835 (c) (Sup. III 1979) provides as follows:

"ANNUAL AUDIT

(c) At least once annually the Director shall make or cause to be made an audit of each grant or contract of assistance under this sub-chapter. Promptly after the completion of such audit, the Director shall determine on the basis of resulting findings and conclusions whether any of the costs of expenditures incurred shall be disallowed. In the event of disallowance, the Director may seek recovery of the sums involved by appropriate means, including court action or a commensurate increase in the required non-Federal share of the costs of any grant or contract with the same agency or organization which is then in effect or which is entered into within twelve months after the date of disallowance."

reach of § 3466, we must conclude that the claims of the United States in the present proceedings qualify as "debts."

The third and final element that the United States must establish to invoke § 3466 is that the debtor has either made a voluntary assignment of his property or committed an act of bankruptcy.[6] The State of Connecticut maintains that the proceedings under General Statutes § 33-491 do not constitute an assignment or an act of bankruptcy unless and until the court appoints a receiver or a trustee. Concededly no such appointment was ever sought

---

[6] The provision of the federal Bankruptcy Act describing acts of bankruptcy, 11 U.S.C. § 21, has been superseded by the new Bankruptcy Code, effective October 1, 1979. The federal Bankruptcy Act applied to these proceedings because they were brought in 1977. Section 21 provided as follows:

"§ 21. ACTS OF BANKRUPTCY

(a) Acts of bankruptcy by a person shall consist of his having (1) concealed, removed, or permitted to be concealed or removed any part of his property, with intent to hinder, delay, or defraud his creditors or any of them, or made or suffered a transfer of any of his property, fraudulent under the provisions of section 107 or 110 of this title; or (2) made or suffered a preferential transfer, as defined in subdivision (a) of section 96 of this title; or (3) suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property; or (4) made a general assignment for the benefit of his creditors; or (5) while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property; or (6) admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt.

(b) A petition may be filed against a person within four months after the commission of an act of bankruptcy. Such time with respect to the third act of bankruptcy shall expire four months after the date the lien through legal proceedings or distraint was obtained and, with respect to the first or fourth act of bankruptcy, such time shall not expire until four months after the date when the

or made in this case. The United States argues that the powers conferred by the state statute upon the Superior Court are so pervasive that the filing of a petition pursuant to § 33-491 constitutes both the voluntary appointment of a trustee and an assignment for the benefit of creditors. We are persuaded that, with respect to § 3466, federal law requires us to accept the position of the United States.

Both the state and the United States rely upon *Bramwell* v. *United States Fidelity & Guaranty Co.,* supra. In that case, an insolvent bank had, by resolution, given full control of its affairs to the

transfer or assignment became so far perfected that no bona fide purchaser from the debtor could thereafter have acquired any rights in the property so transferred or assigned superior to the rights of the transferee or assignee therein, and such time with respect to the second act of bankruptcy shall not expire until four months after the date when the transfer became perfected as prescribed in subdivision (a) of section 96 of this title. For the purposes of this section, it is sufficient if intent to hinder, delay or defraud under the first act of bankruptcy, where such intent is an element of such act, or if insolvency under the second act of bankruptcy, exists either at the time when the transfer was made or at the time when it became perfected, as hereinabove provided.

(c) It shall be a complete defense to any proceedings under the first act of bankruptcy to allege and prove that the party proceeded against was not insolvent as defined in this title at the time of the filing of the petition against him. If solvency at such date is proved by the alleged bankrupt, the proceedings shall be dismissed. In such proceedings the burden of proving solvency shall be on the alleged bankrupt.

(d) Whenever a person against whom a petition has been filed alleging the commission of the second, third, or fifth act of bankruptcy takes issue with and denies the allegation of his insolvency or his inability to pay his debts as they mature, he shall appear in court on the hearing, and prior thereto if ordered by the court, with his books, papers, and accounts, and submit to an examination and give testimony as to all matters tending to establish solvency or insolvency or ability or inability to pay his debts as they mature and, in case of his failure so to do, the burden of proving solvency or ability to pay his debts as they mature shall rest upon him."

state superintendent of banks, who took possession and control of the bank's property and business for the purpose of liquidation. The court began by noting (p. 487) that § 3466 "is to be liberally construed." It then held (p. 489) that a debtor could be sufficiently divested of its property, under § 3466, without having title pass to another. Looking to the substance of the powers conferred upon the bank's transferee, the court found (p. 491) that the transferee's duties "required him to perform the functions of an assignee, receiver or trustee for the liquidation of the debts of an insolvent . . . . [The transferee] had a power that for present purposes had the same effect as a title, and that is enough."

Applying the *Bramwell* test, which looks to substance rather than to form, we must determine whether the powers conferred upon the Superior Court by the plaintiff's petition pursuant to § 33-491 sufficiently divest the plaintiff of possession and control of the totality of its assets to satisfy the third requirement of § 3466. "[C]ontrol over the assets . . . is decisive," the Supreme Court held in *King* v. *United States*, 379 U.S. 329, 337, 85 S. Ct. 427, 13 L. Ed. 2d 315 (1964). In this case, the plaintiff in its petition, following the wording of the statute, asked the court to assume general jurisdiction and supervision over the liquidation of the corporation and to order and adjudge all claims and demands against the corporation. Even though there was no formal conveyance to the court, the plaintiff prayed the court to enter orders for the distribution of all of its property. In effect, the court was empowered by the petition to act as an assignee, receiver or trustee "and that is enough." Whether viewed as an assignment or as a receiver-

ship, the plaintiff's institution of § 33-491 proceedings while insolvent permitted the United States to invoke the priority provisions of § 3466. See *Crateo, Inc.* v. *Intermark, Inc.,* 536 F.2d 862, 865–66 (9th Cir. 1976); *In re Bonnie Classics, Inc.,* 116 F. Sup. 646, 648 (S.D.N.Y. 1953); *In re Dutch O'Neal Motors of Louisiana, Inc.,* 148 So. 2d 468, 470 (La. App. 1963); and see *Wohlschlaeger* v. *Duncan,* 157 F.2d 933, 934 (8th Cir. 1946); *In re Western Auto Associate Store,* 295 F. Sup. 566, 572 (W.D. Va. 1968).

Our conclusion that § 3466 is the governing priority statute dictates the order in which the plaintiff's funds must be distributed. The trial court's assignment of first priority to the claims of Attorneys Reif and Ronai must stand because no appeal has been taken from that order. The state no longer shares a priority status with the United States, because § 33-494 (3) is superseded by § 3466. *Illinois ex rel. Gordon* v. *Campbell,* 329 U.S. 362, 370, 67 S. Ct. 340, 91 L. Ed. 348 (1946); *United States* v. *Oklahoma,* 261 U.S. 253, 260, 43 S. Ct. 295, 67 L. Ed. 638 (1923). The only question that remains is whether the claims of the attaching creditors Jones and Ressler were sufficiently perfected and choate before the initiation of the § 33-491 distribution proceedings to take priority over the claims of the United States. As did the trial court, we hold that they were not. State law requires a judicial lien to be reduced to execution before it can be deemed perfected. General Statutes § 52-328; *Bradbury* v. *Wodjenski,* 159 Conn. 366, 370, 269 A.2d 271 (1970). Federal law requires a judicial lien to be both perfected and choate before it can supersede the priority of the United States; such a lien must at least be reduced to pos-

session before it can prevail. *United States* v. *Gilbert Associates, Inc.,* 345 U.S. 361, 366, 73 S. Ct. 701, 97 L. Ed. 1071 (1953); *Thelussen* v. *Smith,* 15 U.S. (2 Wheat.) 396, 426, 4 L. Ed. 271 (1817); *Nesbitt* v. *United States,* 445 F. Sup. 824, 831 (N.D. Cal. 1978); *United States* v. *Sullivan,* 19 F. Sup. 695, 700 (W.D.N.Y. 1937), aff'd per curiam, 95 F.2d 1021 (2d Cir. 1938).

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment that the claims of the United States are second only to the claims of Reif and Ronai.

In this opinion the other judges concurred.