DANBURY SAVINGS AND LOAN ASSOCIATION, INC. *v.*
COLIN M. DELANEY ET AL.
(13229)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued May 5—decision released June 14, 1988

*Robert A. Nagy,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (state).

*Michael J. Roach,* pro hac vice, with whom were *John B. Hughes,* assistant United States attorney, *Lauren McCurry,* special assistant United States attorney, and, on the brief, *William S. Rose, Jr.,* assistant United States attorney general, *Stanley A. Twardy, Jr.,* United States attorney for the District of Connecticut, and *Gary R. Allen* and *William S. Estabrook,* for the appellee (defendant United States of America).

PETERS, C. J. The commissioner of income maintenance has authority, under General Statutes § 17-82c,[1]

---

[1] "[General Statutes] Sec. 17-82c. ELIGIBILITY OF PERSON HAVING INTEREST IN REAL PROPERTY. LIEN OF STATE. No person shall be deemed ineligible

to record a lien on the real property of a recipient of state public assistance grants. The sole issue in this appeal is when such a lien becomes sufficiently choate to give it priority over a competing federal tax lien. This case began as an action by the plaintiff, Danbury Savings and Loan Association, Inc., to foreclose a mortgage lien on real property owned by the defendants Colin M. Delaney and Valerie E. Delaney. In this foreclosure action, numerous other lienholders, including the United States and the state of Connecticut, were named as parties defendant. The trial court, *Lavery, J.*, approved a foreclosure by sale to Jack R. Hanna for $141,000. Thereafter, the United States filed a motion

to receive an award under this chapter for himself or for any person for whose support he is liable by reason of having an interest in real property, maintained as his home, provided the equity in such property shall not exceed the limits established by the commissioner. The commissioner may place a lien against any property to secure the claim of the state for all amounts which it has paid or may thereafter pay to him or in his behalf under the provisions of this chapter, except for property maintained as a home in aid to families of dependent children cases, in which case such lien shall secure the state only for that portion of the assistance grant awarded for amortization of a mortgage or other encumbrance beginning with the fifth month after the original grant for principal payment on any such encumbrance is made, and each succeeding month of such grant thereafter. The claim of the state shall be secured by filing a certificate in the land records of the town or towns in which any such real estate is situated, describing such real estate. Any such lien may, at any time during which the amount by it secured remains unpaid, be foreclosed in an action brought in a court of competent jurisdiction by the commissioner on behalf of the state. Any real estate to which title has been taken by foreclosure under this section, or which has been conveyed to the state in lieu of foreclosure, may be sold, transferred or conveyed for the state by the commissioner with the approval of the attorney general, and the commissioner may, in the name of the state, execute deeds for such purpose. Such lien shall be released by the commissioner upon payment of the amount by it secured, or an amount equal to the value of the beneficiary's interest in such property if the value of such interest is less than the amount secured by such lien, at his discretion, and with the advice and consent of the attorney general, upon a compromise of the amount due to the state. At the discretion of the commissioner the beneficiary, or, in the case of husband and wife living together, the survivor of them, so long as he or she lives, or a dependent child or children, may be permitted to occupy such real property."

for a determination of priorities, claiming that its status as a holder of federal tax liens entitled it to reimbursement from the foreclosure sale proceeds in advance of reimbursement to the state as a holder of public assistance liens. The state has appealed from a judgment of the trial court, *Moraghan, J.,* assigning first priority to the federal tax liens. We find no error.

The underlying facts are not at issue. The liens of the United States arise out of liabilities of Colin M. Delaney and Valerie E. Delaney for arrearages in federal income taxes for the taxable years 1978 and 1982, together with interest, penalties and lien fees. Pursuant to I.R.C. §§ 6321 and 6322,[2] the United States assessed the 1978 arrearage on September 21, 1981, and the 1982 arrearage on October 23, 1985. These assessments automatically imposed liens on all of the taxpayers' property. I.R.C. §§ 6321, 6322. Notices of these liens were filed, pursuant to I.R.C. § 6323,[3] on January 11, 1983, with regard to the 1978 deficiency and on September 10, 1986, with regard to the 1982 deficiency. In an affidavit of debt filed in the present proceedings on March 31, 1987, the United States asserted that its federal tax liens then totalled $34,410.51.

---

[2] "[I.R.C.] § 6321. LIEN FOR TAXES. If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with.any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

"[I.R.C.] § 6322. PERIOD OF LIEN. Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or become unenforceable by reason of lapse of time."

[3] I.R.C. § 6323 provides in relevant part: "VALIDITY AND PRIORITY AGAINST CERTAIN PERSONS. (a) PURCHASE[R]S, HOLDERS OR SECURITY INTERESTS, MECHANIC'S LIENORS, AND JUDGMENT LIEN CREDITORS. The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lienor credi-

The liens of the state of Connecticut arise out of grants of public assistance to Valerie Delaney by the department of income maintenance pursuant to the program of aid to families with dependent children. In an affidavit of debt filed herein on May 20, 1987, the state asserted that such assistance payments had begun on December 18, 1979, and continued through September 9, 1986, in a total amount of $60,248.38. To secure reimbursement of these grants, the state, on August 24, 1981, pursuant to General Statutes § 17-82c, recorded separate certificates of lien against the interests of Valerie Delaney and Colin Delaney in the land records of the town of Bethel where their real property was located.

The trial court ruled that the federal liens should be given priority even though they postdated the filing of the state's certificates of lien. The court noted that, under applicable precepts of federal law embodied in I.R.C. §§ 6321 and 6322, a federal lien ordinarily takes its place in the priority race at the time when the federal tax is assessed, while a state lien only receives such standing when it has become specific, perfected and choate.[4] *United States* v. *Equitable Life Assurance Society of the United States*, 384 U.S. 323, 327–28, 86 S.

---

tor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.

(b) PROTECTION FOR CERTAIN INTERESTS EVEN THOUGH NOTICE FILED. . . .

(c) PROTECTION FOR CERTAIN COMMERCIAL TRANSACTIONS FINANCING AGREEMENTS, ETC. . . .

(d) 45-DAY PERIOD FOR MAKING DISBURSEMENTS. . . .

(e) PRIORITY OF INTEREST AND EXPENSES. . . .

(f) PLACE FOR FILING NOTICE; FORM. . . ."

[4] The state, in its reply brief, has acknowledged that its original appellate brief incorrectly assumed that federal liens take no priority over state statutory liens until notice of the federal tax liens is filed. Because the state does not qualify as a purchaser, a holder of a security interest, a mechanic's lienor, or a judgment lien creditor under I.R.C. § 6323 (a), the priority of the state's liens is measured, in accordance with I.R.C. § 6322, from the date of the assessment of the federal taxes.

Ct. 1561, 16 L. Ed. 2d 593 (1966); *United States* v. *Pioneer American Ins. Co.,* 374 U.S. 84, 87, 83 S. Ct. 1651, 10 L. Ed. 2d 770 (1963); *United States* v. *New Britain,* 347 U.S. 81, 85–86, 74 S. Ct. 367, 98 L. Ed. 520 (1954). It held that the state's liens in this case could not meet this test because they had not been reduced to possession before the attachment of the federal liens. In arriving at this conclusion, the court relied on definitions of choateness that have been developed in cases arising under 31 U.S.C. § 3713.[5] See, e.g., *United States* v. *Gilbert Associates,* 345 U.S. 361, 366, 73 S. Ct. 701, 97 L. Ed. 1071 (1953). Although we disagree with the court's reliance on the insolvency statute, we nonetheless concur in its judgment that the federal tax liens were entitled to priority because the state liens were still inchoate on October 23, 1985.

I

The state maintains, in its first claim of error, that the trial court erred in importing into this litigation, brought under the federal tax lien statutes, the priority standards that govern cases brought under the federal insolvency statute, 31 U.S.C. § 3713. The state makes three arguments: (1) the insolvency statute was not pleaded at trial; (2) no evidence of insolvency was introduced at trial; and (3) the test for determining the choateness of a competing lien is more stringent under 31 U.S.C. § 3713 than it is under the federal tax lien statutes. We agree.

---

[5] This statute, which is often referred to as § 3466 of the Revised Statutes (1875), governs federal claims against insolvent debtors. Recently recodified as 31 U.S.C. § 3713 (a), it provides: "PRIORITY OF GOVERNMENT CLAIMS. (a) (1) A claim of the United States Government shall be paid first when— (A) a person indebted to the Government is insolvent and—(i) the debtor without enough property to pay all debts makes a voluntary assignment of property; (ii) property of the debtor, if absent, is attached; or (iii) an act of bankruptcy is committed; or (B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor. (2) This subsection does not apply to a case under title 11."

Although there is much to be said in favor of all three of these assertions, the first two are clearly correct and their resolution is dispositive of this issue. The absence at trial of pleading or proof with respect to any claim of insolvency cannot be remedied on appeal. The United States concedes that its trial memorandum in support of its motion for determination of priorities nowhere invoked the federal insolvency statute. Cf. Practice Book § 109A; *Orticelli* v. *Powers,* 197 Conn. 9, 14–15, 495 A.2d 1023 (1985); *Leone* v. *Knighton,* 196 Conn. 494, 495–98, 493 A.2d 887 (1985). The United States relies nonetheless on two facts dispersed throughout these foreclosure proceedings: Valerie Delaney's long history of receiving public assistance payments; and her filing of a petition in bankruptcy while the foreclosure was pending. We are unpersuaded. Although insolvency may be determined without a formal adjudication of bankruptcy, such a determination always requires a finding of fact based on a proper evidentiary foundation. *Community Progress, Inc.* v. *White,* 187 Conn. 128, 135–36, 444 A.2d 1369 (1982). In this case, the state has not been afforded an opportunity to present evidence, or indeed to make argument, that would inform a trier of fact about the validity of the inference of insolvency that the United States finds so compelling.[6] The trial court therefore erred in determining the choateness of the state's liens in accordance with the priority rules developed pursuant to the federal insolvency statute.

## II

The state further maintains that the trial court could not have found that its liens were inchoate if the trial court had properly employed the test for choateness

---

[6] To invoke 31 U.S.C. § 3713 (a), the United States would have had to prove not only that the taxpayers were insolvent but also that while insolvent, they made a voluntary assignment of property, their property was attached or they committed an act of bankruptcy.

that pertains to priority contests between federal tax liens and state statutory liens. A state statutory lien is choate, under federal law, when it is specific and perfected so that "there is nothing more to be done" to establish the identity of the lienor, the property subject to the lien, and the amount of the lien. *United States* v. *Equitable Life Assurance Society of the United States,* supra. Choateness does not require enforcement of a local tax lien by seizure or sale unless local law itself incorporates a requirement of further judicial proceedings to effectuate the lien. *United States* v. *Vermont,* 377 U.S. 351, 358–59, 84 S. Ct. 1267, 12 L. Ed. 2d 370 (1964); *United States* v. *Security Trust & Savings Bank,* 340 U.S. 47, 50, 71 S. Ct. 111, 95 L. Ed. 53 (1950). We disagree with the state that its liens can pass this test.

In this case, the state's recordation, on August 24, 1981, of certificates of lien under § 17-82c clearly fulfilled some of the requirements for a choate state statutory lien. The certificates identified each lienor by name and described with specificity the property subject to the state's lien. The certificates were, however, entirely open-ended with regard to the amount of the secured indebtedness, which, without any dollar amount, was described only as "assistance payments heretofore or hereafter made to or in behalf of the said Valerie Delaney and said dependent child or children." No supplemental recordations ever detailed the amounts of the secured indebtedness. Even in the priority proceedings herein, the state's affidavit of debt did not allocate assistance payments to periods predating either its filings or the federal tax lien filings. To this date, therefore, the record does not reveal the precise amount of the state's liens that antedate those of the United States. Furthermore, the record indicates that, prior to the mortgage foreclosure proceedings initiated by the named plaintiff, the state had taken no steps to foreclose its liens, a process that, under the express

terms of § 17-82c would have required the commissioner of income maintenance to bring "an action . . . in a court of competent jurisdiction." The question that we must answer is whether under these circumstances the state has established that, when the federal tax liens arose, it had liens for which, under federal law, "there is nothing more to be done."

The United States would have us answer this question "No." It maintains that the amount of the state's liens could not be determined unless and until the commissioner of income maintenance obtained a judgment in a specific amount and an order directing foreclosure. Until that time, it argues, the state's liens were contingent as a matter of state law and therefore inchoate as a matter of federal law.

The state maintains, to the contrary, that its liens had become fully matured and certain as to amount before the effective date of the federal tax liens. This claim has two aspects: the state's liens were fully perfected upon filing, because § 17-82c so provides, and they secured the state's rights to reimbursement in an amount measured by grants of public assistance to or for the benefit of each of the Delaneys up to the date of each of the federal assessments. The state comes close to conceding that the liens may have been inchoate in amount when filed but contends that they matured into specificity thereafter by virtue of each unreimbursed public assistance payment. The state invokes analogous concepts in the law of consensual security arrangements, in which a real property mortgage or a commercial security interest may secure future advances as well as contemporaneous or past indebtedness.

We need not decide today whether federal law would permit state statutory liens to include state claims for reimbursement that were uncertain in amount at the

time of their recordation. The United States Supreme Court has characterized as inchoate an assignee's or mortgagee's lien to secure future indebtedness of the taxpayer-debtor. *United States* v. *Pioneer American Ins. Co.,* supra, 91; *United States* v. *Ball Construction Co.,* 355 U.S. 587, 587–88, 78 S. Ct. 442, 2 L. Ed. 2d 510 (per curiam), reh. denied, 356 U.S. 934, 78 S. Ct. 770, 2 L. Ed. 2d 763 (1958); see 2 G. Gilmore, Security Interests in Personal Property (1965) pp. 1068–70; W. Plumb, Federal Tax Liens (3d Ed. 1972) pp. 87–90; F. Kennedy, "From Spokane County to Vermont: The Campaign of the Federal Government Against the Inchoate Lien," 50 Iowa L. Rev. 724, 734–35 (1965). In *United States* v. *Pioneer American Ins. Co.,* supra, 89, the United States Supreme Court also stated that it understood the Congress to have intended the same rule of choateness to apply to "the whole spectrum of state-created liens," whether consensual or statutory in origin. Thereafter, the Federal Tax Lien Act of 1966 included provisions that specifically validate various liens in competition with the federal tax lien in precise terms that distinguish sharply between consensual mortgages and state statutory liens.[7] Those distinctions cast considerable doubt upon continued Congressional acquiescence in the analogy upon which the state would have us rely. Under I.R.C. § 6323 (d),[8] special priority for future advances is confined to advances made in connection with a consensual security interest. Neither the Federal Tax Lien Act nor the Supreme Court of

---

[7] Despite the filing of notice of a federal tax lien, a priority over such a federal lien is given to specially defined real property and special assessment taxes by I.R.C. § 6323 (b) (6) and to certain commercial transactions financing agreements by I.R.C. § 6323 (c). The state's liens do not qualify under either of these provisions.

[8] I.R.C. § 6323 (d) provides: "45-DAY PERIOD FOR MAKING DISBURSE-MENTS. Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing by reason of disbursements made before

the United States has specifically considered whether an inchoate statutory lien for future advances is rendered partially choate by unfiled advances actually made to the taxpayer-debtor prior to the attachment of the federal tax lien.

That difficult question need not be decided because § 17-82c itself incorporates conditions on the state's right to pursue its statutory lien. The state's lien does not encompass an automatic right to seize the debtor's property once unreimbursed public assistance grants have accrued. The statute contemplates that recipients of public assistance may, despite their default, continue to occupy their homes. Although the statute does not spell out the circumstances under which such continued occupancy will no longer be countenanced, we have indicated, in interpreting related provisions in General Statutes § 17-83e, that the state has no power to enforce its rights to reimbursement through summary seizures "giving rise to possible due process deprivations." *Thibeault* v. *White,* 168 Conn. 112, 118, 358 A.2d 358 (1975). Undoubtedly these concerns prompted the legislature to make explicit, in § 17-82c, that "[a]ny such lien may, at any time during which the amount by it secured remains unpaid, be foreclosed in an action brought in a court of competent jurisdiction by the commissioner [of income maintenance] on behalf of the state." Such a foreclosure action, far from being a ministerial act, invokes the equitable exercise of judicial discretion. *Hamm* v. *Taylor,* 180 Conn. 491, 497, 429 A.2d 946 (1980).

the 46th day after the date of tax lien filing, or (if earlier) before the person making such disbursements had actual notice or knowledge of tax lien filing, but only if such security interest—(1) is in property (A) subject, at the time of tax lien filing, to the lien imposed by section 6321, and (B) covered by the terms of a written agreement entered into before tax lien filing, and (2) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation."

For federal tax lien purposes, the significance of the requirement of a judicial foreclosure action in § 17-82c is that, prior to its completion, it cannot be said that "there is nothing more to be done." This case is therefore similar to *State* v. *Bucchieri,* 176 Conn. 339, 351–52, 407 A.2d 990 (1978), in which we concluded that state forfeiture of contraband pursuant to General Statutes § 54-33g did not give the state a choate lien "when the section itself provides for a hearing at which competing claims may be heard and at which forfeiture is to be adjudicated." Id., 351. We held that such a lien resembles an attachment lien which, according to federal law, is inchoate until the time of judgment, and can be defeated by an intervening recorded federal tax lien. *United States* v. *Security Trust & Savings Bank,* supra, 50. Our conclusion found further support in *United States* v. *Vermont,* supra, 358–59, in which the United States Supreme Court expressly held Vermont's tax lien to be choate once assessed because, under Vermont law, the assessment was immediately given the force of a judgment that could be summarily enforced.[9]

We therefore agree with the United States that the filing of the state's liens pursuant to § 17-82c did not create liens that were, in advance of foreclosure proceedings, choate as a matter of federal law. Such liens amounted to no more than " '*a lis pendens* notice that a right to perfect a lien exists.' " *United States* v. *Vermont,* supra, 355, quoting *United States* v. *Security Trust & Savings Bank,* supra. Because the state's liens were still inchoate according to federal law at the time

---

[9] *United States* v. *Vermont* is particularly instructive because the court pointedly distinguished between the test for a choate lien under the federal tax lien statute and the test for a lien that would be valid under the federal insolvency statute. The lien in *United States* v. *Vermont* was choate under the former test. *United States* v. *Vermont,* 377 U.S. 351, 357–59, 84 S. Ct. 1267, 12 L. Ed. 2d 370 (1964).

when the federal tax liens arose, the federal liens were entitled to priority in this case.

There is no error.

In this opinion the other justices concurred.