## CAROL THIBEAULT *v.* HENRY C. WHITE, STATE WELFARE COMMISSIONER, ET AL.

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued December 5, 1974—decision released March 11, 1975

*Francis J. MacGregor,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellants (defendants).

*Robert P. Wenten,* with whom was *Ralph U. Bergman,* for the appellee (plaintiff).

MACDONALD, J. This appeal is from a declaratory judgment rendered by the Court of Common Pleas with regard to the disbursement of funds held in trust pending the resolution of this action. The matter was tried to the court upon a stipulation of facts, the relevant parts of which may be summarized as follows: The plaintiff was formerly a recipient of public assistance under the aid for dependent children program, hereinafter AFDC, administered by the state welfare department. The defendant White, hereinafter commissioner, is commissioner of the welfare department. Prior to receiving public assistance and thereafter, the plaintiff was the owner of a certain parcel of real property, including a dwelling house which she occupied with her children, in the town of Stonington. In accordance with § 17-82c[1] of the General Statutes, the commissioner

---

[1] "[General Statutes] Sec. 17-82c. ELIGIBILITY OF PERSON HAVING INTEREST IN REAL PROPERTY. LIEN OF STATE. No person shall be deemed ineligible to receive an award under this chapter for himself or for any person for whose support he is liable by reason of having an interest in real property, maintained as his home, provided the equity in such property shall not exceed the limits established by the commissioner. The commissioner may place a lien against any property to secure the claim of the state for all amounts which it has paid or may thereafter pay to him or in his behalf under the provisions of this chapter, except for property maintained as a home in aid to families of dependent children cases, in which case such lien shall secure the state only for that portion of the assistance grant awarded for amortization of a mortgage or other encumbrance beginning with the fifth month after the original grant for principal payment on any such encumbrance is made, and each succeeding month of such grant thereafter. The

caused to be placed upon the land records of the town of Stonington a lien against the plaintiff's property for such sums as might become due to the state as a result of its having furnished assistance to the plaintiff and her children.

Sometime prior to October 6, 1970, the plaintiff expressed to the commissioner her intention of selling the aforesaid real property. Thereafter, a dispute arose between the plaintiff and the commissioner as to the disposition of the proceeds of the sale of the real property. The property was sold on October 6, 1970, the aforesaid lien was released, and after the state was reimbursed for the amounts due under § 17-82c, it was agreed by the parties that the remaining proceeds of the sale should be placed in a trustee bank account pending determination of the ownership thereof by the Court of Common Pleas.

claim of the state shall be secured by filing a certificate in the land records of the town or towns in which any such real estate is situated, describing such real estate. Any such lien may, at any time during which the amount by it secured remains unpaid, be foreclosed in an action brought in a court of competent jurisdiction by the commissioner on behalf of the state. Any real estate to which title has been taken by foreclosure under this section, or which has been conveyed to the state in lieu of foreclosure, may be sold, transferred or conveyed for the state by the commissioner with the approval of the attorney general, and the commissioner may, in the name of the state, execute deeds for such purpose. Such lien shall be released by the commissioner upon payment of the amount by it secured, or an amount equal to the value of the beneficiary's interest in such property if the value of such interest is less than the amount secured by such lien, at his discretion, and with the advice and consent of the attorney general, upon a compromise of the amount due to the state. At the discretion of the commissioner the beneficiary, or, in the case of husband and wife living together, the survivor of them, so long as he or she lives, or a dependent child or children, may be permitted to occupy such real property."

The commissioner claims the entire trust account as repayment for AFDC benefits, pursuant to § 17-83e.[2] The plaintiff, however, claims that in AFDC cases liability to repay from property owned prior to obtaining AFDC is limited to the extent of the lien obtained under § 17-82c. The trial court agreed with the plaintiff's contention and with her further claim that § 17-83e is limited to after-acquired property and ordered the fund disbursed to her, together with whatever interest it had accumulated.

The construction placed upon § 17-82c by the trial court ignores the plain meaning of the words contained therein, and thus violates a basic tenet of statutory construction. *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 133, 355 A.2d 236. When language is clear and unambiguous, its meaning is not subject to modification by construction. *State* v. *Simmons,* 155 Conn. 502, 504, 234 A.2d 835; *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36. The provision in § 17-82c for the recording of a lien to secure that portion of an AFDC award relating to amortization of a mortgage or other encumbrance is merely a limit upon the

[2] "[General Statutes] Sec. 17-83e. CLAIM OF STATE FOR REPAYMENT OF AID. If a beneficiary of aid under this chapter acquires property of any kind or interest in any property, estate or claim of any kind, the state of Connecticut shall have a claim, which shall have priority over all other unsecured claims and unrecorded encumbrances, against such beneficiary for the full amount paid to him or in his behalf under said chapter; and, in addition thereto, the parents of an aid to dependent children beneficiary shall be liable to repay to the state the full amount of any such aid paid to or in behalf of either parent, his spouse, and his child or children. In the case of any claim made after October 1, 1959, the claim for medical payments, even though such payments were made prior thereto, shall be restricted to medical disbursements actually made for care of any such beneficiary."

security the state may .obtain to ensure repayment of benefits and is not a limit upon the obligation of the beneficiary to repay the full amount of public assistance. This meaning is clearly imparted from the phrase, "in which case such lien shall secure the state only . . . ." Words in a statute must be construed according to the commonly approved usage of the language. General Statutes § 1-1; *International Business Machines Corporation* v. *Brown,* supra; *State* v. *Briggs,* 161 Conn. 283, 286–87, 287 A.2d 369. The crucial word in the above-quoted phrase is "secure." It has a special meaning in the law relative to protection of a debt against existing assets. In this context its meaning is defined in Webster's Third International Dictionary, page 2053, as: "3 . . . (1): to give pledge of payment to (a creditor) (2): to give pledge or payment of (an obligation) . . . ." and in Ballentine's Law Dictionary (3d Ed.), page 1154, as: ". . . To make certain of payment, guaranteeing against the possibility of nonpayment. . . ." Security is not a limit upon the debtor's duty to repay but merely delineates the extent of assurance of payment to the creditor from the debtor's assets. Thus, the statute is not a bar to repayment of AFDC benefits beyond the amount of the lien.

After finding no inconsistency between § 17-82c and § 17-83e, the trial court proceeded to construe § 17-83e as applying only to after-acquired assets. It is obvious from a reading of these two statutes that the legislature intended to accord different treatment to families of beneficiaries of AFDC and to beneficiaries of other forms of public assistance. It already had made provision in § 17-82c for full security for repayment of funds distributed to the latter. The intendment of § 17-83e was to grant to

the state a priority claim for full repayment as against after-acquired property. As in the case of § 17-82c, it is not a limit upon the beneficiary's obligation to repay.

Further, § 17-83e has two distinct purposes. In the first part of the first sentence, before the semicolon, it creates a claim inuring to the state and grants that claim priority over other unsecured claims and unrecorded encumbrances. With regard to AFDC cases, the statute continues, after the semicolon, "and, in addition thereto, the parents of an aid to dependent children beneficiary shall be liable to repay to the state the full amount of any such aid paid to or in behalf of either parent, his spouse, and his child or children." That is, in addition to the claim given to the state against after-acquired property, the legislature has imposed upon parents of AFDC beneficiaries the liability to repay the state in full for benefits awarded. Such a construction is entirely consistent with the intendment of § 17-82c. Thus, the effect of § 17-82c is to secure to the state repayment, in AFDC cases, of whatever amounts represent the amortization of the mortgage or other encumbrance upon the homestead owned prior to obtaining benefits, the legislature recognizing the need to maintain a proper home for AFDC beneficiaries. The effect of § 17-83e in AFDC cases is to allow a claim against after-acquired property, "and, in addition thereto," to impose a full liability on the beneficiary's parents to repay to the state the benefits awarded above and beyond, or despite the lack of, any after-acquired property. The net effect of § 17-83e in the present case, therefore, is to enable the state to pursue an action for the repayment of total AFDC assistance. It does not give the state the power to make a summary seizure of

the proceeds involved herein, thus circumventing the procedural formalities of the normal civil action for repayment of a debt and giving rise to possible due process deprivations. There are adequate procedures with regard to prejudgment remedies which can secure the total amount owing to the state pending the acquisition of a judgment upon which the state would be entitled to make execution on the funds held in the trust account.

The construction we place upon these statutes is in alignment with the underlying purpose for which they were intended—the recoupment of public assistance funds from those now able to make repayment. The legislature and the courts recognize that public assistance grants to those in need are a worthy necessity. No less necessary is the availability of funds to these programs and it is for this purpose that the legislature has enacted such provisions as those under consideration. This was recognized recently by the United States District Court for the district of Connecticut, discussing §§ 17-83e and 17-83f in *McDougald* v. *Norton,* 361 F. Sup. 1325, 1328 (D. Conn.): "In view of the severe shortage of public assistance funds and the ever mounting demands on them, there is certainly a bona fide governmental interest in recouping such funds from persons who subsequently receive funds from other sources."

Although the trial court was mistaken in its construction of the statutes, it was correct in concluding that the balance of the money being held in trust, plus accrued interest, should be disbursed to the plaintiff. It was error, however, for the court, having arrived at this determination, to go beyond

the declaratory judgment requested and to render judgment for the plaintiff with an order to disburse to the plaintiff.

There is error in the form of the judgment, it is set aside and the court is directed to render judgment, in accordance with the relief sought, declaring that the funds in question, presently held in trust, together with accumulated interest should be disbursed by the trustees to the plaintiff.

In this opinion the other judges concurred.