MARISOL VASQUEZ ET AL. *v.* STATE OF CONNECTICUT

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued April 3—decision released June 3, 1980

*Francis J. MacGregor,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellant (defendant).

*Peter T. Zarella,* for the appellee (plaintiff).

PETERS, J. The sole issue on this appeal is whether the state may recoup hospital payments from a welfare patient when such payments, made under a cost averaging system, exceed the actual cost of routine care and special services rendered. The minor plaintiff Marisol Vasquez brought the present action for declaratory and injunctive relief to enjoin the defendant state from attempting to recover, by way of a lien on the proceeds of an independent cause of action, hospital payments made on the plaintiff's behalf at an average per diem rate in excess of the charge to the general public for comparable services. From the rendition of judgment for the plaintiff, the state has appealed.

As the result of injuries incurred in an automobile accident on January 21, 1978, the plaintiff, a beneficiary of aid to families with dependent children, was admitted to the pediatric unit of St. Francis Hospital where she remained for thirty-eight days until February 28, 1978. The actual cost of the hospital services rendered, and the amount the plaintiff would have been charged had she been a general patient, was $4834.67. That cost, as reflected in the hospital statement, was calculated at a daily rate of $96.60 for routine care, room and board, and included a charge of $1154.87 for special services and $9 for crutches. The hospital billed the state not for its actual costs but for costs calculated, as authorized by General Statutes § 17-312, on the basis of an average per diem charge. Since St. Francis

Hospital's authorized per diem rate was then approximately $250 per day, the state was charged, and duly paid, $9447.56 for the plaintiff's care. When the plaintiff later instituted legal action seeking damages for her personal injuries, an action that is currently pending, the state filed a lien pursuant to General Statutes § 17-83f against any potential recovery by the plaintiff, claiming repayment of the $9447.56 in hospital payments it had paid to St. Francis Hospital on the plaintiff's behalf.[1] The present suit for declaratory judgment and a permanent injunction ensued.

The plaintiff does not contest the validity of the statutory cost averaging scheme of General Statutes § 17-312[2] as a vehicle for administrative convenience except insofar as it may affect her rights vis-a-vis the state's claim for repayment under Gen-

[1] The state's lien is for a total amount of $17,343.72, the remaining portion of which is not at issue.

[2] Section 17-312 of the General Statutes provides in relevant part: "PAYMENTS TO HOSPITALS. (a) The rate to be paid by the state to a hospital receiving appropriations granted by the general assembly shall be the actual cost to such hospital, or the charge to the general public for ward services or the lowest charge for semi-private services if the hospital has no ward facilities, imposed by such hospital, whichever is lowest, for routine services furnished to state patients. Such rate shall be promulgated annually by the committee established under section 17-311. Nothing contained herein shall authorize a payment by the state for such services to any such hospital in excess of the charges made by such hospital for comparable services to the general public.

(b) The state shall also pay to such hospitals the cost of special services rendered by such hospitals at a daily average cost rate which shall be established annually by said committee for each such hospital based on the actual cost to each hospital for such services furnished to state patients.

(c) The term 'actual cost' as used in this section means the current average cost per inpatient day of care furnished such patients, computed in accordance with accepted principles of hospital cost reimbursement."

eral Statutes §§ 17-83e[3] and 17-83f.[4] The trial court, *Graham, J.,* concluded that the plaintiff was not liable under §§ 17-83e and 17-83f to reimburse the state for hospital expenditures made on her behalf in excess of the cost to private patients on the ground that General Statutes § 17-312 (a) does not authorize "payment by the state for [hospital] services . . . in excess of the charges made by such

[3] Section 17-83e of the General Statutes provides: "CLAIM OF STATE FOR REPAYMENT OF AID. If a beneficiary of aid under this chapter has or acquires property of any kind or interest in any property, estate or claim of any kind, the state of Connecticut shall have a claim, which shall have priority over all other unsecured claims and unrecorded encumbrances, against such beneficiary for the full amount paid to him or in his behalf under said chapter; and, in addition thereto, the parents of an aid to dependent children beneficiary shall be liable to repay to the state the full amount of any such aid paid to or in behalf of either parent, his spouse, and his child or children. The state of Connecticut shall have a lien against property of any kind or interest in any property, estate or claim of any kind of the parents of an aid to dependent children beneficiary, in addition and not in substitution of its claim, for amounts owing under any order for support of any court, including any arrearage under such order, provided household goods and other personal property identified in section 52-352, and real property pursuant to section 17-82c, so long as such property is used as a home for the beneficiary shall be exempt from such lien. In the case of any claim made after October 1, 1959, the claim for medical payments, even though such payments were made prior thereto, shall be restricted to medical disbursements actually made for care of any such beneficiary."

[4] Section 17-83f of the General Statutes provides in relevant part: "STATE'S CLAIM AGAINST PROCEEDS OF CAUSE OF ACTION. In the case of causes of action of beneficiaries of aid under this chapter, the claim of the state shall be a lien against the proceeds therefrom for repayment under section 17-83e, and shall have priority over all other claims except attorney's fees for said causes, expenses of suit, cost of hospitalization connected with the cause of action by whomever paid over and above hospital insurance or other such benefits, and, for such period of hospitalization as was not paid for by the state, physicians' fees for services during any such period as are connected with the cause of action over and above medical insurance or other such benefits; and such claim shall consist of the total assistance repayment for which claim may be made under the provisions of this chapter."

hospital for comparable services to the general public." Cf. *Doe* v. *Institute of Living,* 175 Conn. 49, 60–61, 392 A.2d 491 (1978). We agree with the result reached by the trial court, but affirm the judgment on related but different grounds. *W. J. Megin, Inc.* v. *State,* 181 Conn. 47, 54, 434 A.2d 306 (1980); *State* v. *Assuntino,* 180 Conn. 345, 352–53, 429 A.2d 900 (1980); *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978).

The determinative statute and the key to our analysis is General Statutes § 17-83e which, as a general recoupment statute, provides the state with a claim against the property or other assets of a beneficiary of public assistance for the full amount of the aid paid to the recipient. As amended in 1961, § 17-83e restricts any claim for medical repayments to "medical disbursements actually made for care of any such beneficiary." See Public Acts 1961, No. 510, § 1; and see generally *Thibeault* v. *White,* 168 Conn. 112, 358 A.2d 358 (1975). The state's entitlement to reimbursement for medical payments is by the express terms of § 17-83e a claim more limited in scope than is the state's ordinary right to recoup. For general recoupment purposes, the state may recover "the *full* amount paid to him or in his behalf"; in the case of medical payments, the state's claim is "restricted to medical disbursements *actually made for care* of any such beneficiary." (Emphasis added.) There is nothing in the clear and unambiguous language of the statute; cf. *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 6, 434 A.2d 293 (1980); *Thibeault* v. *White,* supra, 115; or in its legislative history that would indicate that the statutory limitation on state claims for medical repayments to the amount of "medical disbursements actually made

for care" of the recipient was intended to serve as a floor rather than as a ceiling. We agree with the contention of the plaintiff that the state's payment on a cost-averaged basis is not attributable to "medical disbursements actually made" insofar as such a payment reflects charges greater than those which the hospital would have billed a general patient. Such an excess in payment is directly related not to the medical services rendered; cf. General Statutes § 17-83e; but rather to the pooling system in which the state and the hospitals are engaged for the purpose of economic savings and administrative convenience under General Statutes § 17-312.

We recognize that there may be cases in which the actual cost of providing inpatient hospital care may exceed the charge to the general public for ward services. This was the issue addressed in *Connecticut State Department of Public Welfare* v. *Department of Health, Education, and Welfare,* 448 F.2d 209, 213–14 (2d Cir. 1971), wherein that court required payment of the actual reasonable costs incurred, pursuant to the federal Social Security Act; 42 U.S.C. § 1396a (a) (13) (D); notwithstanding the contrary mandate of General Statutes § 17-312 (a). Cf. General Statutes § 17-312a. Suffice it to say that no such showing has been made on the record before us.

We therefore hold that the plaintiff's liability to the state under §§ 17-83e and 17-83f is limited to $4834.67, the amount she would actually have been charged for routine care and special services had she been a general patient at St. Francis Hospital.

There is no error.

In this opinion the other judges concurred.