PAULINE PRESSLEY *v.* WILLIAM PRESSLEY

BOGDANSKI, C. J., SPEZIALE, PETERS, PARSKEY and ARMENTANO, Js.

Argued June 4—decision released August 4, 1981

Paige J. Everin, assistant attorney general, with whom, on the brief, was Carl R. Ajello, attorney general, for the appellant (state).

Edward H. Smith, pro se, as court-appointed trustee, with whom, on the brief, was Edwin C. Higgins III.

John P. Spilka, for the appellee (plaintiff).

PARSKEY, J.  The genesis of this appeal is a dissolution proceeding between the named parties. The attorney general became a party, pursuant to General Statutes § 46b-55,[1] by virtue of the commitment, on May 24, 1978, of one of the children of the marriage to the custody of the department of children and youth services, which placed him at Mount Saint John's School with state funding. In the dissolution decree the court ordered the defendant husband to pay to the state fifteen dollars per week for the support of the child. It further ordered that counsel for the plaintiff and the defendant be appointed co-trustees for the sale of the real property jointly owned by the parties and that payment be made from the proceeds of the sale against the mortgage thereon, any encumbrances on or off the record or indebtedness related to the property, and certain specified bills owed by the parties. Upon the sale of the property the co-trustees moved the court to review the final accounting. The attorney for the defendant requested permission to withdraw his appearance as court-appointed trustee and as attor-

---

[1] "[General Statutes] Sec. 46b-55. (Formerly Sec. 46-63). ATTORNEY GENERAL AS PARTY. PATERNITY ESTABLISHMENT. (a) The attorney general shall be and remain a party to any action for dissolution of marriage, legal separation or annulment, and to any proceedings after judgment in such action, if any party to the action, or any child of any party, is receiving or has received aid or care from the state."

ney for the defendant. The attorney general was not served with notice of either motion as required by Practice Book § 120. The court, *Edelberg, J.*, approved the final accounting and the motion to withdraw appearance and, in effect, to be discharged as co-trustee. The state thereafter filed a motion to open and vacate those orders and a motion for modification of the support order, both of which motions the court, *Hendel, J.*, denied. The state has appealed both from the orders of approval and from the denial of its motions to open and modify.

## I

It is undisputed that the state received no notice of either the motion to review the final accounting or the motion to withdraw appearance as court-appointed trustee and as attorney for the defendant. It is also conceded that the court committed error in acting on the motions in the absence of notice. Such notice was not only required by our rules; Practice Book §§ 120 through 126; but also is a fundamental requirement of law. *Winick* v. *Winick*, 153 Conn. 294, 298–99, 216 A.2d 185 (1965). But it is argued that the error was harmless because the state could have protected itself in the judgment by requesting a provision that would require the trustees to seek the approval of the court for the distribution of the proceeds of sale, by placing a lien on the property pursuant to § 17-82c,[2] or by requesting an order that

---

[2] "[General Statutes] Sec. 17-82c. ELIGIBILITY OF PERSON HAVING INTEREST IN REAL PROPERTY. LIEN OF STATE. No person shall be deemed ineligible to receive an award under this chapter for himself or for any person for whose support he is liable by reason of having an interest in real property, maintained as his home, provided the equity in such property shall not exceed the limits established by the commissioner. The commissioner may place a lien against any property to secure the claim of the state for all amounts which it has paid or may thereafter pay to him or in his behalf under the provisions of

the proceeds of the sale be turned over to the state to defray the support payments. While the state could have resorted to any of those procedures, those were not the only arrows in the state's quiver.

Section 17-83e[3] gives the state a lien against any kind of property held by parents of an aid to

this chapter, except for property maintained as a home in aid to families of dependent children cases, in which case such lien shall secure the state only for that portion of the assistance grant awarded for amortization of a mortgage or other encumbrance beginning with the fifth month after the original grant for principal payment on any such encumbrance is made, and each succeeding month of such grant thereafter. The claim of the state shall be secured by filing a certificate in the land records of the town or towns in which any such real estate is situated, describing such real estate. Any such lien may, at any time during which the amount by it secured remains unpaid, be foreclosed in an action brought in a court of competent jurisdiction by the commissioner on behalf of the state. Any real estate to which title has been taken by foreclosure under this section, or which has been conveyed to the state in lieu of foreclosure, may be sold, transferred or conveyed for the state by the commissioner with the approval of the attorney general, and the commissioner may, in the name of the state, execute deeds for such purpose. Such lien shall be released by the commissioner upon payment of the amount by it secured, or an amount equal to the value of the beneficiary's interest in such property if the value of such interest is less than the amount secured by such lien, at his discretion, and with the advice and consent of the attorney general, upon a compromise of the amount due to the state. At the discretion of the commissioner the beneficiary, or, in the case of husband and wife living together, the survivor of them, so long as he or she lives, or a dependent child or children, may be permitted to occupy such real property."

[3] "[General Statutes] Sec. 17-83e. CLAIM OF STATE FOR REPAYMENT OF AID. If a beneficiary of aid under this chapter has or acquires property of any kind or interest in any property, estate or claim of any kind, the state of Connecticut shall have a claim, which shall have priority over all other unsecured claims and unrecorded encumbrances, against such beneficiary for the full amount paid to him or in his behalf under said chapter; and, in addition thereto, the parents of an aid to dependent children beneficiary shall be liable to repay to the state the full amount of any such aid paid to or in behalf of either parent, his spouse, and his child or children. The state of Connecticut shall have a lien against property of any kind or interest in any property, estate or claim of any kind of the parents of an aid

dependent children beneficiary for amounts owing under any court order of support. Exempt from such lien pursuant to § 17-82c is real property so long as such property is used as a home for the beneficiary. We construed § 17-83e in *Thibeault* v. *White,* 168 Conn. 112, 358 A.2d 358 (1975), as applying to after-acquired property. Subsequently the statute was amended by Public Acts 1976, No. 76-334, § 5 to the form in which it appears in footnote three, supra. The effect of this amendment was to make this section applicable to current property and also to give the state a statutory lien under certain circumstances.

Thus, at the time of the decree, June 30, 1978, the child beneficiary was in the custody of the state and therefore the statutory lien became applicable to the jointly owned property. The fact that the lien was not recorded is of no moment with respect to the parties to the dissolution proceeding. The lien was an unrecorded encumbrance on the jointly owned property and the co-trustees were under a court order to pay all encumbrances whether recorded or not. In their capacity as court-appointed trustees they were acting as an arm of the court. Cf. *New Haven Savings Bank* v. *General Finance & Mortgage Co.,* 174 Conn. 268, 270, 386 A.2d 230 (1978). As such they were required to report their doings to the court for its approval before they were dis-

to dependent children beneficiary, in addition and not in substitution of its claim, for amounts owing under any order for support of any court, including any arrearage under such order, provided household goods and other personal property identified in sections [52-352a to 52-352c] inclusive, and real property pursuant to section 17-82c, so long as such property is used as a home for the beneficiary shall be exempt from such lien. In the case of any claim made after October 1, 1959, the claim for medical payments, even though such payments were made prior thereto, shall be restricted to medical disbursements actually made for care of any such beneficiary."

charged.[4] The state as a party in interest had a right to be heard with respect to these matters and therefore the failure to notify the state was harmful error.

## II

The state moved for modification of the weekly support order on the basis of the receipt by the defendant husband of the sum of $5101 from the proceeds of the sale of the jointly owned home. We have already discussed the state's interest in these proceeds and will not repeat that discussion here. The amount of the proceeds, while relevant to the question of modification, was insufficient standing alone to warrant a modification. *Easton* v. *Easton,* 172 Conn. 451, 456, 374 A.2d 1090 (1977). The court was properly reluctant to make any changes in the existing support order in the absence of a more complete picture of the husband's financial circumstances. Such reluctance does not constitute an abuse of discretion even if it results in a denial of the motion to modify.

There is error in part, the judgment denying the state's motions to open and vacate the approval of the final accounting and granting of the motion to withdraw appearance is set aside and the case is remanded with direction to grant the state's motions and thereafter to proceed according to law.

In this opinion the other judges concurred.

---

[4] Although the dissolution decree did not require the trustees to submit their deed for the court's approval (see General Statutes §§ 46b-81 [b] and 52-500) the trustees, having been appointed by the court, required court approval to be relieved of their fiduciary duties. See *Shaler & Hall Quarry Co.* v. *Campbell,* 53 Conn. 327, 329, 2 A. 755 (1885). In the course of such proceeding the court or any interested party could have ascertained upon inquiry whether the trustees had discharged their duties in accordance with the court's judgment.