On September 22, 1986, a judgment finding the defendant, John Weeks, the father of the plaintiff, Judith Langan's child, was entered by the court, (Jackaway, J.). At the commencement of this paternity proceeding, the State of Connecticut was not a participant.
Pursuant to the terms of the judgment, the defendant was ordered to pay $50.00 per week as current support, attorneys' fees to Ms. Langan, court costs and a pediatric bill. No past-due support or lying-in expenses were awarded.
On July 13, 1987, an Agreement to support was approved by the court, (Lifshitz, F.S.M.), wherein Mr. Weeks, to settle a criminal non-support matter, agreed to an amount of past-due support owed to Ms. Langan and agreed to pay an additional $10.00 per week on an arrearage of $1,607.61. Apparently, between the date CT Page 5768 of the paternity judgment and the date the Agreement to Support was approved, Ms. Langan had been granted the services of the Support Enforcement Division, (hereinafter referred to as "SED"), pursuant to Conn. Gen. Stat. Section 17-578.
Subsequently, a contempt application was brought on behalf of the plaintiff by SED against the defendant alleging failure to pay his weekly order. This application was filed on August 9, 1988 and resolved on December 28, 1988.
Another contempt application was initiated by the attorney who had represented Ms. Langan during the 1986 paternity proceeding for fees and costs on February 5, 1991. This was resolved on June 11, 1991.
On April 22, 1991, a third contempt application was filed on behalf of the plaintiff by SED alleging the defendant's failure to pay the weekly order.
This last contempt application has been pending since the initial hearing date of June 6, 1991. Further continuances have been granted and hearings have been held on August 7, 1991, (when a capias mittimus had to be issued due to the defendant's failure to appear), September 25, 1991, (when the defendant was found in contempt and incarcerated), October 2, 1991, January 17, 1991, (when the defendant's motion to modify the weekly orders was denied), March 13, 1992, (when another capias mittimus had to be issued), May 8, 1992, (when the defendant was again found in contempt and incarcerated), May 20, 1992 and July 8, 1992. Another hearing on the contempt proceeding to monitor the defendant's compliance with orders for payment has been scheduled for September 2, 1992.
At the hearings of June 6, 1991, September 24, 1991 and October 2, 1991, the SED officer presenting the case requested that this magistrate find two arrearage balances, one to the State of Connecticut and one to the plaintiff.
Since the entry of the 1986 judgment, the plaintiff has been a recipient of Aid To Families With Dependent Children ("AFDC") during several periods of time. On or about September 15, 1991, Ms. Langan last applied for and was granted AFDC benefits. In January of 1992, she discontinued receipt of these benefits.
The issue addressed by this memorandum first arose at the contempt/modification hearing of January 17, 1992. On that date, the SED officer presenting the case asked this magistrate to find only an arrearage owed to the State of Connecticut, and none owed to the plaintiff. The arrearage claimed owing to the state a CT Page 5769 that time included unpaid support due the plaintiff for all time periods since 1986 when she had not been on welfare, as well as for unpaid support due her for periods when she had been a beneficiary. At the January 17 hearing, the plaintiff objected to there being only one arrearage finding, and the matter was continued to allow for notification to the Office of the Attorney General as to her stated objection, and to allow the plaintiff an opportunity to obtain counsel. Counsel for the plaintiff and the State eventually requested, by agreement, a special hearing to determine the arrearages owed, which was held on May 28, 1992.[1]
The State of Connecticut claims Ms. Langan's right to collect amounts of unpaid support due her prior to the time she last went on assistance in September of 1991 was assigned to it pursuant to General Statutes Section 17-82b, which states, in pertinent part:
 Application for aid under this chapter shall be made to the commissioner of income maintenance . . . Such application in the case of aid to dependent children shall be made by the supervising relative . . . By such application, the applicant shall assign to the commissioner the right of support, present, past and future, due all persons seeking assistance and shall assist the commissioner in pursuing support obligations due for the absent parent. Notice of such assignment shall be conspicuously placed on said application and shall he explained to the applicant at the time of the application.
The questions presented in this case are: (1) whether the plaintiff made a proper assignment of her child support arrears to the State in accordance with Section 17-82b; and (2) whether the State is estopped from claiming her arrears if the assignment was not properly obtained.
The assignment of support rights which have accrued at the time assignment is executed is a condition of eligibility for AFDC benefits required by federal law.2 U.S.C. § 602 (a)(26), subsection (A) states in pertinent part:
Section 602(a). Contents.
 A state plan for aid and services to needy families with children must . . .
 (26) provide that, as a condition of eligibility for aid, each applicant or recipient will be required . . .
 (A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at CT Page 5770 the time such assignment is executed;
The issue of what support rights are included upon a State's securing an assignment from the applicant has not been the focus of the dispute in this case. Courts which have analyzed42 U.S.C. § 602 (26)(A) have interpreted that clause to include all support arrearages accrued at the time of the assignment, as well as support due after the assignment until the applicant's assistance payments are discontinued. In Re Stoval, 721 F.2d 1133,1135 (1983); State Ex. Rel. Crews v. Parker, 354 S.E.2d 501, 504
(N.C. 1987); State Ex. Rel. Southwell v. Chamberland,361 N.W.2d 814, 818 (Minn. 1985); Iverson v. Schulte,367 N.W.2d 570, 573 (Minn.App. 1985); In Re Green, 36 B.R. 398, 391
(1984).[2] Upon discontinuance, the assignment automatically terminates except with respect to unpaid support obligations that have accrued under such assignment up to the amount of assistance paid. 42 U.S.C. § 657 (c), see also45 C.F.R. § 302.51 (f).[3]
If the State collects support in excess of the public assistance paid, the assignor is entitled to receive the excess.42 U.S.C. § 657 (b)(4).
The plaintiff in this case does not dispute that state and federal laws required she assign her right to past due support to the State when she applied for assistance. The focus of her argument is that the State never secured a valid assignment from her because its representatives failed to follow the specified procedures set forth in General Statutes Section 17-82b to effectuate the assignment procedures she claims are mandatory.
Section 17-82b states that notice of the assignment shall be conspicuously placed on the application and explained to the applicant at the time of the application. The evidence presented at the May 28 hearing proved that the State failed to meet these alleged notice requirements.
The Department of Income Maintenance eligibility worker who took Ms. Langan's most recent application, one Kathy Mullady, was not called to testify. Ms. Langan testified that Ms. Mullady never explained to her that her arrearage would be assigned to the state, but only that any support monies received from Mr. Weeks while she was on public assistance would go to the State.
Another state witness, Patrick Hearn, who supervises eligibility workers in Torrington, stated he did not know how he would answer a hypothetical applicant, owed $10,000.00 in support arrears by an ex-husband, if she asked him, "What happens to my $10,000.00?" He indicated that he had never encountered such a question. It may well be that because applicants aren't being CT Page 5771 made fully aware of the full extent of the assignment, the question is not being raised.
Michael Cole, supervisor of the Manchester district office of the State Department of Human Resources Bureau of Child Support Enforcement, another state witness, conceded that notice of the assignment was not conspicuously placed on any of Ms. Langan's several applications for AFDC, all of which were submitted as pages one through thirteen of State's Exhibit A.
One of the forms submitted, dated March 2, 1989 (Exhibit A at page 6), has a clause stating, "I understand . . . I have assigned all my support rights to the State . . . This means that if I receive child support directly, I will turn it over to the state." This does not adequately advise an AFDC applicant that the arrears owed to her upon application will now be owed to the State. Rather, this language strongly suggests that the assignment is of current support only while she is on assistance.
In fact, none of the language on any of the voluminous forms submitted by the State clearly advises the applicant, who may be owed a considerable sum for past-due child support arrears at the time of application, that she will be assigning her right to that sum to the State.
If the language of Section 17-82b requiring conspicuous notice and explanation of the nature of the assignment is mandatory, the State clearly failed to fulfill its obligation to duly notify Ms. Langan of the full extent of the rights she was relinquishing.
The State, however, argues that the notice requirement is just a suggestion — a procedural nicety — because the assignment is accomplished by operation of law without notice, as required by federal law and as intended by the Connecticut legislature.
Federal law controlling in this case is contained in Section IV-D of the Social Security Act. Although the Social Security Act imposes specific requirements upon the states in its implementation of the federal laws and regulations, the states must pass enabling legislation to fully effect the federal specifications.
Federal regulations have been adopted to implement the provisions of 42 U.S.C. § 602 (a)(26)(A), the section which requires applicants to assign their support rights as a condition of eligibility for AFDC. 45 C.F.R. § 232.11 requires assignment either in writing or by operation of law. In fact, the regulations contemplate situations where an assignment is not effective and suggest alternative methods of collecting payment. The regulations make it very clear that if "there is a failure to execute an assignment pursuant to this section, the State may attempt to establish paternity CT Page 5772 and collect child support pursuant to appropriate state statutes and regulations." 45 C.F.R. § 232.11(c).
Contrary to the State's contention,42 U.S.C. § 602 (a)(26)(A) does not itself create an assignment of support rights by operation of law. The provision, and accompanying regulation, directs the state to legislate an assignment of support rights in formulating its own assistance plan, but discretion is left to the states in formulating the method by which the assignment is to be accomplished. State Ex. Rel. Crews v. Parker, supra, 504 States may pass laws which are not expressly forbidden by or tacitly inconsistent with federal law and regulations even though not specifically mandated by the federal law. Doe v. Norton,365 F. Sup. 65, 70 (1973); Persico v. Maher, 191 Conn. 384, 392-393,465 A.2d 308 (1983); Morgan v. White, 168 Conn. 336, 344,362 A.2d 505 (1975); Chartier v. Commissioner of Welfare,32 Conn. Sup. 514, 519, 340 A.2d 194 (1974). See also Conn. Gen. Stat. Sec. 17-83a(e).
Connecticut has chosen to provide that conspicuous notice and an explanation must be given to applicants regarding assignment of their support rights. Committee deliberations onPublic Act No. 80-55, where the notice language was first enacted, indicates that the original bill proposed may have sought to create an assignment by operation of law upon the mere completion of an application, but due process concerns resulted in a final enactment which ensures that the welfare recipient knows and understands what he is relinquishing. Conn. Joint Standing Committee Hearing, Human Resources, pp. 27-35 (1980). McCulloh v. McCulloh, Family Support Magistrate Division, No. FA88-0087818, (Lifshitz, F.S.M.), June 22, 1992, 6 S.M.D. 126 (1992). (See State's Exhibit F).
In contrast, other state laws effectuating such assignments in cases that have discussed the issue of assigned support explicitly create assignments by operation of law and afford no deference to the rights of the applicants.
North Carolina's law, cited in State Ex. Rel. Crews v. Parker, supra, N.C.G.S. Sec. 110-137 (Cum.Supp. 1985), states that:
 By accepting public assistance for or on behalf of a dependent child or children, the recipient shall be deemed to have made an assignment to the state or to the county from which such assistance was received of the right to any child support owed for the child or children up to the amount of public assistance paid.
The Illinois law discussed in Matter of Stoval, supra, Illinois Rev. Stat. Ch. 23, Sec. 10-1, states: CT Page 5773
 By accepting financial aid under this Code, a spouse or a parent or other person having custody of a child shall be deemed to have made assignment . . . of any and all rights, title, and interest in any support obligation up to the amount of financial aid provided.
Minnesota law, Minn. Stat. Sec. 256.74, subdivision 5, considered in both State Ex. Rel. Southwell v. Chamberland, supra, and Iverson v. Schulte, supra, requires, in pertinent part:
 An applicant for assistance, or a recipient of assistance . . . is considered to have assigned to the public agency responsible for child support enforcement at the time of application all rights to child support and maintenance from any other person the applicant may have in the applicant's own behalf or in the behalf of any other family member from whom application is made. . . . The assignment (1) is effective as to both current and accrued child support and maintenance obligations;
In Nelson v. Adult and Family Services Division, Or. App.,601 P.2d 899 (1979), the Oregon Court of Appeals ruled that an ambiguous assignment that did not sufficiently explain the legal relationship being created was invalid. Oregon law, ORS Sec.418.042, requires an executed assignment as well, but does not specifically require explanation to the applicant:
 Aid . . . shall not be granted to, or on behalf of, any applicant or recipient or as long as the applicant or recipient refuses to assign to the Department of Human Resources any rights to support from any other person such applicant may have in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and which have accrued at any time such assignment is executed.
This court does not find persuasive the State's argument that the language of Section 17-82b requiring conspicuous notice and an explanation is directory, not mandatory, so that State's failure to comply with the notice provision does not render the assignment invalid.
Connecticut case law establishes a distinction between mandatory and directory language in statutory construction. In order to determine whether language is mandatory or directory, the language must be examined in the context of the wording, the legislative history and the statutory context. The basic test is whether the prescribed mode of action relates to a matter of substance or convenience. International Brotherhood of Teamsters v. Shapiro, 138 Conn. 57, 68, 32 A.2d 345 (1951); LeConche v. Elliqers, 215 Conn. 701, 579 A.2d 1 (1990); Tramontano v. Dilieto, CT Page 5774192 Conn. 426, 432, 472 A.2d 768, (1984); Akin v. Norwalk,163 Conn. 68, 72, 301 A.2d 258 (1972).
A reading of the plain language of Section 17-82b would justify no one in concluding that the authority before whom the application is made in accordance with its provisions would have discretion to notify and/or explain what is essentially a summary seizure of an indigent person's property. Danbury Savings and Loan Assn. v. Delaney, 207 Conn. 743, 542 A.2d 1143 (1988); Dupuis v. Welfare Commissioner, 34 Conn. Sup. 586,378 A.2d 610 (1976). At a minimum, due process requires the agency to explain, in terms comprehensible to the applicant, exactly what the agency is proposing to do and why the agency is taking the action. Ortiz v. Eichler, 616 F. Sup. 1046, 1061 (1985).
The notice is a matter of right in favor of the applicant, and it is not reasonable to suppose that it was the intent of the legislature to leave that matter to the discretion of an intake eligibility worker. Clearly, the notice provision is of the essence of the assignment which is to be accomplished pursuant to Section 17-82b. Capobinco v. Samorak, 102 Conn. 310, 128 A. 648 (1925).
In the second place, the use of the word, "shall", as distinguished from the more permissive, "may", in a statute conferring power and authority for the benefit of the public or individuals is generally construed as mandatory. The State ex. rel. Foote v. Bartholomew, 103 Conn. 607, 612, 132 A.2d 301 (1925); Blake v. Meyer, 145 Conn. 612, 661, 145 A.2d 584 (1958); State ex. rel. Barnard v. Ambrogio, 162 Conn. 491, 501, 294 A.2d 529 (1972); Jones v. Civil Service Commission, 175 Conn. 504, 509,400 A.2d 721 (1978); Farricelli v. Connecticut Personnel Appeal Board, 186 Conn. 198, 202-203, 440 A.2d 286 (1982).
The State's contention that the notice language is directory not only defeats its purpose, but also ignores the plain meaning of "shall." Shall appears three times within two consecutive sentences. The State argues that the word is mandatory the first time it appears, but directory the second two times it is used.
"Statutory language is to be given its plain and ordinary meaning unless such meaning is clearly at odds with the legislative intent." State v. Taylor, 153 Conn. 72, 82, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S.Ct. 1372, 16 L.Ed.2d 442 (1966). In the construction of statutes, words and phrases shall be construed according to the commonly approved usage of the language. Conn. Gen. Stat. Sec. 1-1(g).
Statutes are construed so that no parts of a legislative enactment are treated as insignificant and unnecessary. There is a presumption of purpose behind every sentence, clause or phrase in a CT Page 5775 legislative enactment, the use of "shall" in a notice provision compels it to be mandatory. Statewide Grievance Committee v. Rozbicki, 211 Conn. 232, 42, (1989), Sullivan v. Liberty Mutual Fire Insurance Company, 174 Conn. 229, 233, 384 A.2d 384
(1978).
Courts in this state have recognized that other types of AFDC statutory assignments require applicants or recipients to be afforded due process. In DuPuis v. Welfare Commissioner, supra, the Appellate Session of the Superior Court held that the State could not summarily seize a recipient's interest in a decedent's estate without specific statutory authorization that gave due consideration to the due process rights of the applicant. Judge Shea, in his concurring opinion in Dupuis, disagreed that there had to be statutory authorization for the State to require an assignment, but stressed that there still was:
 A legitimate objection to the form which the plaintiff was requested to sign [since] it failed to reflect with proper clarity the real nature of the transaction and did not specify the amount of the debt which the assignment was intended to secure . . . Id., at 613.
The context in DuPuis is quite analogous to the instant case. Clearly, the notices contained on the State's application forms do not fully address the concerns expressed by Judge Shea.
In 1984, the United States Bankruptcy Court for the District of Connecticut also interpreted the meaning of an AFDC assignment of an applicant's right to support. In In Re Green, 36 B.R. 398,391 (1984), the court stated:
 The State contends that since the debtor's daughter applied for and received assistance under the AFDC program, she implicitly assigned her right to support by operation of law. The State's contention is without merit. This Court finds that Conn. Gen. Stat. Sec. 17-82b requires an application for assistance to be in writing. An application which is not written can neither "contain" the information required in Sec. 17-82b, nor have notice of the assignment "conspicuously placed on" it as required by Sec. 17-82b.
One final issue that needs to be discussed in determining whether or not the State still has any right to claim Ms. Langan's past-due support despite its failure to comply with the mandatory notice provisions of Section 17-82b is the possible impact of Gen. Stat. Sec. 17-83e, which provides that:
 . . . the parents of an aid to dependent children beneficiary shall be liable to repay to the state the full amount of any such CT Page 5776 aid paid to or in behalf of . . . his child or children. The state of Connecticut shall have a lien against property of any kind or interest in any property, estate or claim of any kind of the parents of an aid to dependent children beneficiary, in addition and not in substitution of its claim, for amounts owing under any order for support of any court or any family support magistrate, including any arrearage under such order, provided household goods and other personal property identified in section 52-352b and real property pursuant to section 17-82c, as long as such property is used as a home for the beneficiary, shall be exempt from such lien. (Emphasis added.)
The effect of Section 17-83e is to impose upon the parents of a minor beneficiary a full liability to repay the state the amount of the benefits awarded, even though a child support obligation may require a parent to pay or receive less in support than the full amount of assistance rendered. Thibeault v. White, 168 Conn. 112,117, 358 A.2d 358 (1975); Danbury Savings and Loan Assn. v. Delaney, 207 Conn. 743, 753, 542 A.2d 1153 (1988); Cross v. Wilson, 35 Conn. Sup. 628, 633, 103 A.2d 1103 (1978); State v. Griffin, 35 Conn. Sup. 603, 607, 401 A.2d 62 (1978); Vasquez v. State of Connecticut, 181 Conn. 130, 134, 434 A.2d 330 (1980).
The net effect of Section 17-83e is to enable the State to pursue an action for the repayment of total AFDC assistance. It does not give the State the power to demand a summary seizure of the obligor's property, thus circumventing the procedure formalities of a normal civil action for repayment of a debt and giving rise to possible due process deprivations. There are adequate procedures with regard to prejudgment remedies which can secure the total amount owing to the State pending the acquisition of a judgment upon which the State would be entitled to make execution. Thibeault v. White, supra, 117-118.
However, even if the State can arguably institute a civil collection action against the plaintiff to collect the full amount of assistance paid on behalf of her child, it cannot seek attachment or execution on her child support monies. Section 17-83e specifically exempts household goods and "other personal property" identified in Gen. Stat. Section 52-352b from the Section 17-83e lien. Section 52-352b(h) specifically exempts "court approved payments for child support" from attachment and execution by any creditor, including the State. This exemption statute makes no distinction between creditors; some designated types of property are set aside to the debtor as beyond the reach of any judicial process. Sienkiewicz v. Sienkiewicz, 178 Conn. 675, 680,425 A.2d 116 (1979).
Since 17-83e precludes the State from using a civil collection proceeding to acquire the plaintiff's support monies, the State's CT Page 5777 right to collect that sum is limited to instances where the State has secured an assignment in compliance with the provisions of Section 17-82b.
Conclusion
Accordingly, the State of Connecticut is not entitled to a finding that the past-due support owed to Ms. Langan prior to her acceptance of AFDC benefits in September of 1991 should be found as an additional amount of arrearage owed to the State.
As of May 27, 1992, arrearages are therefore found as follows: to the State of Connecticut, $4,738.94; to the plaintiff, Judith Langan, $3,488.62.
The State of Connecticut is further ordered to insure that the SED, Bureau of Collections, and Department of Human Resources review and monitor the automated collection process of the defendant's payment to fully protect Ms. Langan's right to the arrearage found above.
As ordered by this court on July 8, 1992, this case is further continued to September 2, 1992 for further proceedings on the pending contempt application.