[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
ARTICULATION RE: MOTION FOR SUMMARY JUDGMENT (NO. 265)
This action was brought in 1982 by six individual residents of Oronoque Village, a residential open space condominium development[1] in Stratford, Connecticut. Certain defendants now move for summary judgment without opposition from the plaintiff. The original complaint sought declaratory and injunctive relief regarding the rights of village residents to join the Oronoque Village Golf and Country Club ("Club"),[2] which had been approved as an accessory use of Oronoque Village, and concerning the Club's conformity with applicable Stratford Zoning Regulations ("Regulations").
The original defendants consisted of individual successors in interest to the dissolved developer of Oronoque Village, operators of the Club, members of the boards of directors and governors of the Club, the Stratford Planning and Zoning Commission ("Commission"), and the Commission's administrator and zoning enforcement officer.
Over the years, the Oronoque Village condominium Association, Inc. ("Association") has emerged as the sole plaintiff, and three groups comprise the defendants: (1) those who originally owned the club (Norman Haflich, Thomas White and the "Bargas CT Page 1591 defendants");[3] (2) those who currently own and operate the Club (Angelo DiVincenzo and the "CST defendants";[4] and (3) the municipal defendants (the Stratford Planning and Zoning Commission, Gary Lorentson, Doris McLellan and Michael Bobko).
The operative complaint, dated January 31, 1989, is in three counts. Count one seeks a determination that the Club was and is being operated and maintained in violation of sections 4.1.6.6, 4.1.6.7, and 4.1.6.12.4 of the Stratford Zoning Regulations[5] and of one of the conditions imposed by the Commission when it approved the development[6] in the following respects: the golf course does not primarily serve the residents of the Village and therefore is not a permitted accessory use; the Club is not controlled by the membership; the Club is operated for profit; the dining facilities at the Club are used as a restaurant, catering facility or commercial enterprise although located in a residential zone; Village residents are excluded from using the dining facilities at the Club so that the facilities are not primarily serving the residents; and golf memberships are not limited to Village residents.
Count two seeks the same determinations as count one but specifically names the lessees of the Club's dining facilities, i.e., defendants Joseph Clemente and Angelo DiVincenzo. Count three is directed at the municipal defendants and seeks a determination that they have not complied with their statutory duties to remedy zoning violations by the Club. Count three does not concern the movants and, therefore, the motion for summary judgment does not address that count.
Pursuant to the court's order dated May 4, 1982, notice of this action was given to potentially interested parties. All parties to the action have answered the complaint, with the exception of Angelo DiVincenzo who has not appeared.[7]
Defendants CST Realty, Joseph Clemente, Vincent Sorrentino and Joseph Tartagni filed a motion for summary judgment asking for a determination that the Club is an integral part of the Oronoque Village development that serves primarily the residents of the Village, and as such conforms to section 4.1.6.12.4 of the zoning regulations. Although the movants have not specifically moved for judgment on both counts one and two, the motion implicates both counts. The plaintiff concedes that the motion should be granted if the operation and use of the Club complies with a certain Declaration of Restrictions and Covenants attached to plaintiff's CT Page 1592 memorandum.[8] The municipal defendants have filed an objection to the motion on the basis that a determination cannot be made at this time as to whether certain zoning regulations are being complied with. The remaining defendants have not responded to the motion.
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384. The burden is on the party seeking summary judgment to show that there are no material facts in dispute.Connell v. Colwell, 214 Conn. 242, 246, 571 A.2d 116 (1990). Once he has done so, the burden falls on the party opposing the motion to present evidence that a disputed factual issue exists. Hammerv. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578-79,573 A.2d 699 (1990). "If the affidavits and other supporting documents [in opposition] are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof." New Haven Tobacco Co. v.O'Brien, 37 Conn. Sup. 815, 819, 438 A.2d 440 (App. Sess. 1981).
If the nonmoving party does not respond to the summary judgment motion as provided by Practice Book § 380, "the court is entitled to rely upon the facts stated in the affidavits of the movant." Kakadelis v. DeFabritis, 191 Conn. 276, 281, 464 A.2d 57
(1983). In assessing the facts presented, the court may also consider "the inferences which [can] reasonably and logically be drawn" from the parties' affidavits. DeDominicis v. AmericanNational Fire Insurance Co., 2 Conn. App. 686, 687, 483 A.2d 616
(1984). See also United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 379, 260 A.2d 596 (1969).
"A declaratory judgment action is a special proceeding under General Statutes [section] 52-29 that is implemented by [sections] 389 and 390 of the Practice Book." Rhodes v. Hartford, 201 Conn. 89,92, 513 A.2d 124 (1986). "The purpose of a declaratory judgment action is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties." Connecticut Assn. ofHealth Care Facilities, Inc. v. Worrell, 199 Conn. 609, 613,508 A.2d 743 (1986). "[T]he sole function of the trial court is to ascertain the rights of the parties under existing law."Middlebury v. Steinmann, 189 Conn. 710, 715, 458 A.2d 393 (1983). CT Page 1593
The rights of the parties "[are] determined by the [factual] situation which has developed at the time of trial and not by that existing at the time the action was begun." Edward Balf Co. v.East Granby, 152 Conn. 319, 323, 207 A.2d 58 (1965). "The dispute should not be settled on the basis of a situation which no longer exists." Id.
The judgment rendered in a declaratory judgment action must answer the questions posed and declare whether or not the parties have the rights to which they lay claim. United Oil Co., supra, 374. The judgment must respond to the pleadings, issues and prayers for relief and should answer such questions as are answerable, regardless of whether the answers favor the plaintiff or the defendant. Id., 375. Where the questions propounded in the complaint are not stated with the precision required by Practice Book § 391(b), however, the court may decline to render a declaratory judgment on such questions. See Id., 373; Adams v.Rubinow, 157 Conn. 150, 167-68, 241 A.2d 49 (1968); Kievman v.Grevers, 122 Conn. 406, 412, 189 A. 609 (1937). Finally, the Supreme Court has held that it is error for the trial court to go beyond the declaratory judgment requested. Thibeault v. White,168 Conn. 112, 118-19, 358 A.2d 358 (1975) (court's order that monies be disbursed to plaintiff when plaintiff sought only declaratory judgment determining his right to such monies held to be in error).
It is undisputed that Oronoque Village was approved by the Stratford Planning and Zoning Commission as a residential open space development pursuant to subsection 4.1.6.12 of the Stratford Zoning Regulations on January 21, 1970. See letter from Planning and Zoning Commission dated January 22, 1970, appended as Exhibit "B" to Brief in Support of the CST Defendants' Motion for Summary Judgment; Response of Bargas defendants, Haflich and White to Plaintiff's Request for Admissions dated February 5, 1989 (no. 236), para. 4; Responses and Objections of CST Realty, Sorrentino, Tartagni, Clemente to Plaintiff's Request for Admissions dated September 18, 1989 (no. 245), para. 1. The Regulations permit the Commission to authorize certain uses (entitled "special cases") in one family residence districts which would otherwise be prohibited, and allows the Commission to impose conditions on its approval as needed. See section 4.1.6 of the Regulations. A residential open space development is such a "special case." A bona fide club or community house not operated for profit and a golf course operated by a membership club are two other "special cases." See sections 4.1.6.6 and 4.1.6.7 of the Regulations (see CT Page 1594 footnote 5, infra, for text of regulations). It is undisputed that the Club was approved by the Commission as an "accessory use" of the Village pursuant to section 4.1.6.12.4 of the Regulation (see footnote 5, infra, for text of regulation). See Responses to Plaintiff's Request for Admissions dated September 18, 1989 (nos. 243, 245 and 247), para. 10.
The crux of plaintiff's complaint is that the Club, by virtue of the way in which it is being operated, is not an integral part of the overall development and does not primarily serve the residents of Oronoque Village. The plaintiff concludes, therefore, that the Club is in violation of sections 4.1.6.12.4 and sections 4.1.6.6 and 4.1.6.7 of the Regulations.
Since the initiation of this action, the Club has been sold to the movants herein, who argue in their motion for summary judgment that the membership procedures, use, and operation of the Club have changed so as to conform to section 4.1.6.12.4 of the zoning regulations. The movants assert that since there is no factual issue as to the manner of the current operation of the Club, and since, as a matter of law, the requirement that the Club be provided primarily to serve the residents of the Village is satisfied, the movants are entitled to a declaration to that effect.
The movants have provided evidence in the form of an affidavit from defendant Sorrentino, one of the owners, and deposition testimony from depositions of Gary Lorentson, Michael Bobko and Michelle Gyscek, officers of the Commission. In his affidavit, defendant Sorrentino has appended exhibits in support of his allegations that changes in the use and operation of the Club have been made to meet the objections of the plaintiff and to conform to section 4.1.6.12.4. The exhibits include several letters to the residents of Oronoque Village and the current rules and regulations of the Club. Among the changes instituted are: catering for residents and club members only; free non-golfing social memberships for all residents; access to Club facilities for all residents; use of the golf course by social members once a month at the guest rate; priority for residents in obtaining golf membership; elimination of private non-member functions; availability of weekday golf memberships for residents if residents have 40 regular memberships; use of the golf course for walking and jogging when the course is not used for golfing; and no advertising of restaurant facilities or social functions except to Village residents. Defendant Sorrentino's affidavit also CT Page 1595 states that the Club is located within the Village boundaries and appends a map of the area. These specific facts concerning the operation of the Club have not been disputed. There is no reason to conclude that the Club is not being operated as outlined by defendant Sorrentino.
The municipal defendants are the only parties that have attempted to raise issues of fact in opposition to the motion. They have submitted an affidavit sworn to by defendant Gary Lorentson, the current planning and zoning administrator, stating in substance that he is unable to determine at this time whether or not the present use of the Club complies with the Regulations, particularly sections 4.1.6.12.1 (see footnote 1), 4.1.6.12.3,[9]
and 4.1.6.12.15[10]. As stated above, the onus is on the nonmoving party to provide the curt with evidence that a genuine issue of material fact exists and conclusory statements that an issue of fact exists are insufficient. Hammer, supra, 578-79. An exception to this general rule is where the nonmoving party does not have access to information which is solely in the hands of the moving party. See Dorazio v. M.B. Foster Electric Co.,157 Conn. 226, 230, 253 A.2d 22 (1968). Here this is not the case. The municipal defendants have not met their burden. Since no issues of material fact have been raised by the nonmoving parties, the court may rely on the evidence introduced by the moving party. See Kakadelis, supra, 281.
Having concluded that there are no genuine issues of material fact, the court must now address the nine legal questions posed in plaintiff's prayer for relief.
Questions "1" and "3": Whether the Club and clubhouse dining facilities must be operated as a membership club and not as a proprietary or for-profit entity, as required by sections 4.1.6.6 and 4.1.6.7 of the Regulations.
Plaintiff relies on sections 4.1.6.6 and 4.1.6.7 for the proposition that the Club and dining facilities must be operated as a membership club rather than as a proprietary or for-profit entity. Sections 4.1.6.6, 4.1.6.7 and 4.1.6.12 provide for distinct and separate uses of property which are allowed in one family residence districts upon application to and approval of the Commission. See footnote 5, infra. It is clear from the letter signed by the Commission on January 22, 1970, that the Oronoque Village development was approved as a special use under 4.1.6.12 only. Therefore, sections 4.1.6.6 and 4.1.6.7 are inapposite and CT Page 1596 any violations of those sections are irrelevant to the matter before the court.
Questions "6" and "8": Whether the operation of the Club and dining facilities as a proprietary for-profit enterprise is in violation of the Stratford Zoning Regulations.
Section 4.1.6.12 of the Regulations does not prohibit the Club and dining facilities from being operated as a proprietary for-profit enterprise as long as the Club is an integral part of the overall development and serves primarily the residents thereof. See section 4.1.6.12.4. Although many of the other "special cases's in section "4" of the Regulations mandate that the facility be "not operated for profit", this language does not appear in section 4.1.6.12.
Question "5": Whether a restaurant or catering facility at the Club must be restricted to use of Village residents or whether such service can be open to the public.
A restaurant or catering facility in a residential open space development is permissible only as an accessory use or an accessory building since any other use would be prohibited by the Regulations. Thus, as long as the restaurant or catering facility is an integral part of the overall development serving primarily the residents of the development, it is a permissible use under the Regulations. There is no language in 4.1.6.12 which requires that the restaurant or catering facility be limited to Village residents.
Questions "2", "4", "7", "9": Whether the Club and the dining facilities must service primarily the residents of the Village; and if so, whether the operation of the Club and dining facilities violates this requirement.
There is no question that the Club and dining facilities, as accessory uses/buildings of Oronoque Village, are required to be an integral part of the Village and serve primarily the residents thereof pursuant to the express language of section 4.1.6.12.4 of the Regulations.[11]
Because of the proximity of the Club and dining facilities to the condominium units, their location within the boundaries of the overall development, and because of the relationship with the residents of the development as expressed in the rules and CT Page 1597 regulations of the Club, the court concludes that the Club and dining facilities are an "integral part" of the condominium development.
To "serve primarily" the residents of the development, it is not necessary that the Club serve them exclusively. Webster's New International Dictionary (2d ed. unabridged) defines "primary as "[t]hat which stands first in order, rank, or importance. . . ." Black's Law Dictionary (6th ed.) defines "primary" as "[f]irst; principal, chief; leading." As movants point out in their memorandum, one of the conditions imposed by the Commission for approval of the development was that a minimum of 20% of the golf course memberships be offered to residents of the Town of Stratford, other than condominium owners. Thus, the court concludes that the Commission itself did not foresee that the Club would be used exclusively by the Village residents.
The Club's governing body has instituted a policy concerning the use of the Club which gives residents of the Village first preference for golf membership and entitles all residents to free social membership. The rules and regulations of the Club state that social membership entitles the member to use of all clubhouse facilities during regularly scheduled hours and entitles the member to play the golf course once a month at the guest fee rate. Should the resident desire to obtain a golf membership, his or her application will be placed on the waiting list ahead of all other applicants, and no other application shall be processed until all unit owners on the waiting list have been accepted. Thus, all residents of the Village have access to the facilities of the Club, and should they desire to purchase a golf membership, they will be given priority.
Given the current use of the Club as set forth in the rules and regulations of the Club and as described in the affidavit of defendant Sorrentino, the court concludes that the Club and dining facilities serve primarily the residents of the development, and thus conform to section 4.1.6.12.4 of the Regulations.
Summary judgment in this declaratory judgment action enters in accordance with the above holdings, and in light of the court's ruling, the injunctive relief requested by the plaintiff is denied.
E. EUGENE SPEAR, JUDGE CT Page 1598